[No. 10712-1-II. Division Two. October 18, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. MONTE ORIN BROWN, *Appellant.*

740

*Curtis A. Shelton,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Roger A. Bennett* and *Thomas C. Duffy, Deputies,* for respondent.

REED, J.—Monte Brown appeals his jury convictions on two counts of indecent liberties and four counts of statutory rape in the first degree. Brown challenges: (1) the propriety of allowing an amendment of the information on the eve of trial; (2) the trial court's refusal to dismiss one count of indecent liberties and admitting evidence relating thereto; (3) the sufficiency of the evidence to convict and to support a unanimous verdict in light of the lack of specificity in the victim's testimony; (4) the court's authority to sentence him under the sentencing reform act; (5) the exceptional sentence imposed; and (6) the court's refusal to give him credit for time served in California while fighting extradition. We affirm, except as to (6).

In the fall of 1985, Julie Snyder contacted the Clark County Sheriff's Office after learning that Monte Brown was taking showers with her 10–year–old stepsister, Tammy. Snyder feared that Brown was sexually abusing

Tammy, based upon his abuse of her beginning when she was Tammy's age and continuing to age 17.

Police and social workers contacted Tammy several times in their investigation. Initially, Tammy admitted that she had showered with Brown and that touching had occurred, but refused to provide further details. However, in later interviews Tammy gave police detailed information regarding the sexual contact she had experienced with Brown. Sheriff's deputies contacted Brown regarding these allegations, after which he left the state.

Based upon this information, Brown was charged with five counts of statutory rape in the first degree on October 3, 1985. The information originally alleged incidents occurring as early as 1982, but subsequent amendments (including a third amendment on the eve of trial, after jury selection) narrowed the focus to acts constituting either indecent liberties or statutory rape occurring "during the years 1984–1985."

When the original information was filed, based upon information given by the victim and her sister Julie, a warrant was obtained to search the defendant's residence for various items relating to the alleged crimes. A number of items were found, including a device known as a "penis enlarger," candles, a sexually explicit book, and two vibrators.

Several months after the information was filed, Brown was arrested in Sacramento, California, where he was discovered living under an assumed name. Brown spent 83 days confined in California jails while contesting his extradition to Washington, and made his first appearance in Clark County Superior Court on July 9, 1986.

After several delays, trial began on December 11, 1986. At trial, the State relied on Tammy's testimony, medical testimony, and the physical evidence seized from the defendant's home. Tammy's testimony included estimates of the number of times she was molested, and described the frequency of particular acts during the relevant time periods in general terms, such as "sometimes", "not very

often", or "just about every day". For the most part, Tammy was not specific as to dates.[1] Instead, she described the defendant's usual course of conduct in detail and tied particular kinds of abuse to events in her life occurring at that time.[2]

The State sought to admit the "penis enlarger," a vacuum device, at trial over defense objections. Defendant argued, among other things, that the device was not relevant, and moved to dismiss count 6, which alleged that the defendant committed indecent liberties by having the victim operate the "penis enlarger" device for his sexual gratification. He also argued that, if relevant, any probative value the device had was outweighed by its substantial prejudicial effect. The motion was denied, and the evidence was admitted.

Brown moved for dismissal at the close of the State's case, and again following the close of evidence, arguing that there was insufficient evidence to sustain a conviction. This motion was denied, and the jury was instructed that it must unanimously agree "that the same underlying criminal act has been proved beyond a reasonable doubt". *See State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). The jury convicted the defendant on all counts.

The court determined Brown's presumptive sentencing range for each count, and after entering findings and conclusions pursuant to RCW 9.94A.120(2), imposed exceptional sentences for all but count 6. The defendant was sentenced to 120 months for each count of indecent liberties, and 240 months for each count of statutory rape, to be served concurrently. This appeal followed.

---

[1]Her testimony *was* specific as to one incident of sexual intercourse, which occurred on September 19 or 20, 1985.

[2]Most often, these events were quite general, such as her grade in school, and place of residence. These events were tied to particular charged acts, usually by the structure of the prosecutor's questions.

Other testimony identified particular incidents, by reference to times when she and the defendant were almost "caught." Unfortunately, with one exception, these incidents were not linked to any particular charged act.

## I
### AMENDMENT OF THE INFORMATION

We first consider Brown's contention that the trial court erred by allowing the prosecution to amend the information on the first day of trial, because the amended information charged a different crime. We find the defendant's argument unpersuasive.

The amended information changed one count of the information from statutory rape to indecent liberties, after the victim changed her story regarding whether the defendant penetrated her with a vibrator, and apparently dropped two other counts. The defendant objected to the amendment, but did not ask for a continuance, claim that he was misled or surprised, or otherwise make any showing of prejudice.

■ CrR 2.1(e) states: "**Amendment.** The court may permit any information . . . to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." The defendant has the burden of showing prejudice under this rule, and the fact that the defendant does not request a continuance is persuasive of lack of surprise and prejudice. *State v. Gosser,* 33 Wn. App. 428, 435, 656 P.2d 514 (1982); *see also State v. Purdom,* 106 Wn.2d 745, 748, 725 P.2d 622 (1986) (substantial rights of the defendant were violated when prosecutor was allowed to amend information on the day of trial, resulting in a different charge, without granting a continuance *when one was requested,* thus suggesting that failure to request a continuance may be fatal to a defendant's claim that amendment on the day of trial is error). "Where the principal element of the new charge is inherent in the previous charge and no other prejudice is demonstrated, it is not an abuse of discretion to allow amendment on the day of trial." *State v. Gosser,* 33 Wn. App. at 435.

Here, Brown did not ask for a continuance and has shown no prejudice; the amendment *eliminated* some charges and reduced others. The reduced charge involved

the same evidence and presented no problems for the preparation of Brown's defense. The principal element of the new charge of indecent liberties, *i.e.*, "sexual contact" (*see* RCW 9A.44.100), is inherent in the crime of statutory rape. Under these circumstances, it was not error to allow amendment of the information on the eve of trial.

## II
## REFUSAL TO DISMISS COUNT 6

Brown next challenges the trial court's admission of the "penis enlarger" into evidence, and its refusal to dismiss count 6 of the third amended information.[3] Count 6 alleged that the defendant had Tammy operate the vacuum pump of the device to help him achieve sexual gratification. The defendant argues that because Tammy did not "touch" him during this activity, that his conduct does not establish the statutory requirement of "sexual contact" as set forth in RCW 9A.44.100(1) and (2).

Brown asserts that the crime of indecent liberties cannot be committed without direct physical contact between the perpetrator and victim. While conceding that his conduct could constitute indecent exposure involving a child under the age of 14 under RCW 9A.88.010 (a gross misdemeanor), Brown contends it cannot meet the definition of indecent liberties without necessarily elevating conduct constituting only indecent exposure to a class B felony. We disagree.

Former RCW 9A.44.100[4] provided, in relevant part:

(1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

. . . .

---

[3]Brown mistakenly cites to ER 404(b) in his argument. Although admission of the "penis enlarger" may have had the additional effect of showing conformity with a character trait, it was not offered as evidence of *other* crimes, wrongs, or acts. Rather, it was offered as the instrumentality of the charged crime. Therefore, ER 404(b) is not called into question.

[4]RCW 9A.44.100 was rewritten by Laws of 1988, ch. 145, § 10, and ch. 145, § 2.

(b) When the other person is less than fourteen years of age; or

. . . .

(2) For purposes of this section:
(a) "Sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party.

■ The crime of indecent liberties may be committed by touching through clothing. *In re Adams,* 24 Wn. App. 517, 519, 601 P.2d 995 (1979); *see also State v. Johnson,* 28 Wn. App. 459, 461, 624 P.2d 213 (1981) (although there was no evidence of direct contact between defendant's genitals and the victim, his exposure while the victim was on his lap established that such contact as occurred was sexual in character), *aff'd,* 96 Wn.2d 926, 639 P.2d 1332 (1982); *State v. Gilpin,* 756 P.2d 445, 451–52 (Mont. 1988); *State v. Peterson,* 560 P.2d 1387, 1391 (Utah 1977). We see no reason to distinguish activity such as occurred here from these cases. In both, lack of direct contact is immaterial when the sexual nature of the contact that did occur is established.

The sexual contact between Brown and Tammy was achieved by an instrumentality which served as an extension of the person. We see no difference between such activity as fondling a child with a gloved hand.[5] We are satisfied that Brown's conduct is of the type the Legislature intended to proscribe. The court did not err by refusing to dismiss count 6 of the information. Additionally, the evidence properly was admitted; the device was probative of the crime charged as it was the instrumentality of that crime, and it was corroborative of Tammy's testimony.[6]

---

[5]For that matter, we see no difference between the activity forming the basis of count 1, and that charged in count 6. Count 1 alleged indecent liberties by use of a vibrator around the genital area, without penetration. This "indirect" contact, also achieved by use of an instrumentality, was *not* challenged on similar grounds.

[6]Moreover, the State correctly points out that, even if defendant's activity with the "penis enlarger" was not criminally proscribed, it would be relevant and admissible as tending to show a lustful disposition toward the victim. *State v. Ferguson,* 100 Wn.2d 131, 133–34, 667 P.2d 68 (1983).

## III
### JURY UNANIMITY

We next consider Brown's contention that the trial court erred when it denied his motions to dismiss and for arrest of judgment. He argues that the evidence was insufficient to support his convictions because Tammy's testimony was not specific enough to enable the jury to agree unanimously on the particular incident or act constituting the charged crime.

*State v. Petrich, supra,* held that in cases where the evidence indicates that several distinct criminal acts have been committed but the defendant is charged with only one count of criminal conduct, the constitutional requirement of unanimity is assured by either: (1) requiring the prosecution to elect the act upon which it will rely for conviction; or (2) instructing the jury that all 12 jurors must agree that the same criminal act has been proved beyond a reasonable doubt. *State v. Petrich,* 101 Wn.2d at 572. In this case, the jury was instructed according to the "either/or" rule of *Petrich.* The defendant has not challenged the adequacy of the instruction; instead, he argues that the jury's task, given the evidence presented to it, was an "impossible" one.

The *Petrich* rule was a modification of a rule first announced in *State v. Osborne,* 39 Wash. 548, 81 P. 1096 (1905), and later explained in *State v. Workman,* 66 Wash. 292, 119 P. 751 (1911). These cases required the prosecutor to elect which of several distinct crimes within the evidence and proof is relied on for conviction. *State v. Osborne,* 39 Wash. at 552; *State v. Workman,* 66 Wash. at 294. In more recent times, our courts have had occasion to reconsider whether the election rule strikes a proper balance between the defendant's rights and the problems presented in the prosecution of cases involving sexual molestation of children. It is in the context of such cases that the issues associated with evidence of multiple offenses and jury unanimity usually arise. *State v. Petrich,* 101 Wn.2d at 572. Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse

has occurred on a regular basis and in a consistent manner over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Moreover, because the molestation usually occurs outside the presence of witnesses, and often leaves no permanent physical evidence, the State's case rests on the testimony of a victim whose memory may be clouded by a blur of abuse and a desire to forget. *See People v. Luna*, ___ Cal. App. 3d ___, 250 Cal. Rptr. 878, 884 (1988), quoting *People v. Martinez*, 197 Cal. App. 3d 767, 243 Cal. Rptr. 66, 73 (1988) (Hamlin, J., dissenting).

In recognition of this fact, our Supreme Court has approved of such "general" testimony in another context—its admissibility—stating that "[t]o require [the victim] to pinpoint the exact dates of oft-repeated incidents of sexual contact would be contrary to reason." *State v. Ferguson*, 100 Wn.2d 131, 139, 667 P.2d 68 (1983). Likewise, the *Petrich* court modified the rule of *Osborne* and *Workman* to allow the option of a unanimity instruction in lieu of election in recognition of the fact that requiring an election under such circumstances may be "impractical", and can interfere with the charging decision by encouraging multiple charges when they are not warranted. *State v. Petrich*, 101 Wn.2d at 572.

However, *Petrich*, like *Osborne* and *Workman*, involved evidence tending to prove several distinct offenses where only one count of criminal conduct was charged. Implicit in the *Petrich* court's conclusions that either an election or a unanimity instruction will protect the defendant's right to a unanimous verdict is an assumption that there is some evidence presented permitting either the prosecutor or jury to make a meaningful election between the numerous acts to which the victim testifies. The crux of Brown's position is that Tammy testified to a series of identical acts which

were not distinguished by any individualizing characteristic, thus making such an election impossible. We disagree.

In addition to constitutional concerns of jury unanimity, *State v. Stephens,* 93 Wn.2d 186, 607 P.2d 304 (1980), there is also the issue of a defendant's fundamental right to due process. This right is implicated where the evidence may be so general that it effectively precludes mounting a successful defense, such as an alibi or misidentification. *See, e.g., People v. Van Hoek,* 200 Cal. App. 3d 811, 246 Cal. Rptr. 352 (1988); *People v. Castro,* 133 Cal. 11, 65 P. 13 (1901); *People v. Williams,* 133 Cal. 165, 65 P. 323 (1901).[7] However, due process is a flexible concept requiring accommodation of the competing interests involved; its procedural requisites necessarily vary, depending on the nature of those interests. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542–43, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985); *Buffelen Woodworking Co. v. Cook,* 28 Wn. App. 501, 505, 625 P.2d 703 (1981). Whether a defendant has been afforded due process depends in part upon the defenses available to him. In cases where the accused child molester virtually has unchecked access to the victim, neither alibi or misidentification is likely to be a reasonable defense. The true issue is credibility. *See People v. Obremski,* ___ Cal. App. 3d ___, 255 Cal. Rptr. 715, 719–20 (1989). Brown's defense was not alibi or misidentification, but complete denial, coupled with an attack on Tammy's credibility. The jury's task was to decide who was telling the truth, the defendant or the victim. In light of the fact that the jury *was* instructed that its verdict must be unanimous as to the offense relied on for conviction, we do not think more specificity in testimony was necessary for the jury to reach a proper verdict.[8] Tammy described the defendant's conduct in clinical detail, including the time of day and

---

[7]Defendant Brown raised the due process issue for the first time in his reply brief and statement of additional authorities, citing only *Van Hoek.*

[8]We recognize that more specificity in testimony may be required when alibi or misidentification is raised as a defense. However, this is not that case.

room in which it usually occurred, and the physical positions assumed by each. Her testimony sufficiently described a single episode for each offense, which was repeated as part of a pattern of abuse.

We think this holding strikes a proper balance of the competing interests involved in "resident child molester" cases. *Contra, People v. Van Hoek, supra; People v. Castro, supra*. Rendering such testimony as was given here inadequate even under a unanimity instruction would force prosecutors to make an election that the *Petrich* court described as "impractical." With the exception of those who happen to select victims with better memories or who are 1–act offenders, the most egregious child molesters effectively would be insulated from prosecution. *People v. Obremski*, 255 Cal. Rptr. at 719. We cannot countenance such a result when alibi or misidentification is not raised as a defense.

Because we find Tammy's testimony was specific enough to overcome the defendant's due process challenge, we need not address Brown's argument that the lack of specificity in the testimony rendered the evidence insufficient to support the convictions. Nevertheless, we feel compelled to observe that such would not be the case. *See State v. Osborne*, 39 Wash. at 552; *People v. Vargas*, __ Cal. App. 3d __, 253 Cal. Rptr. 894, 902–07 (1988).

## IV
### SENTENCING

Brown also challenges the court's authority to sentence him under the peculiar facts of this case. He argues that because the jury was not required to specify which of the many incidents of abuse were relied on for his convictions under *Petrich*,[9] and some of these incidents occurred prior to the effective date of the Sentencing Reform Act of 1981 (SRA), sentencing him under the SRA would violate the

---

[9]*See State v. Gooden*, 51 Wn. App. 615, 618, 754 P.2d 1000, *review denied*, 111 Wn.2d 1012 (1988).

prohibition against ex post facto legislation. U.S. Const. art. 1, §§ 9, 10; Const. art. 1, § 23. We disagree.

It is well settled that the SRA applies only to crimes committed after the effective date of the act (July 1, 1984), and that crimes committed before that date are subject to sentencing under the indeterminate sentencing system. *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 508, 730 P.2d 1327 (1986); *In re Blair*, 38 Wn. App. 670, 672–73, 688 P.2d 532 (1984); RCW 9.94A.905; RCW 9.95.009(2).

Four of Brown's six convictions conceivably could be based on conduct occurring before July 1, 1984.[10] The State urges us to uphold Brown's sentences for these convictions under the SRA because the jury could have found that all of the acts forming the basis of his convictions occurred after July 1, 1984. Although the evidence certainly preponderates in that direction, we must reject the State's invitation. There simply is no way to isolate the particular act the jury relied upon.

However, even if we assume that the jury relied upon pre–SRA acts for conviction, we find no ex post facto violation. A law violates the ex post facto prohibition if it: (1) aggravates a crime or makes it greater than it was when committed; (2) permits imposition of a different or more severe punishment than was permissible when the crime was committed; (3) changes the legal rules to permit less or different testimony to convict the offender than was required when the crime was committed. *In re Williams*, 111 Wn.2d 353, 362, 759 P.2d 436 (1988). Additionally, for a law to be ex post facto, it must disadvantage the offender affected by it. *Addleman*, 107 Wn.2d at 506.

On the other hand, a change in the law does not violate the ex post facto provision if it neither increases the punishment for the offense nor alters the ingredients of the

---

[10]Counts 5 and 6 charged the defendant with crimes occurring in 1985; the court was clearly required to sentence the defendant under the SRA for these counts.

offense, the ultimate facts necessary to establish guilt, or the degree of proof necessary. *State v. Henderson,* 50 Wn. App. 158, 160, 747 P.2d 504 (1987) (citing *State v. Edwards,* 104 Wn.2d 63, 71, 701 P.2d 508 (1985)), *review granted,* 110 Wn.2d 1027 (1988). Whether a greater punishment is imposed by the later act than was available under the former is determined by looking to the standard of punishment prescribed by the statutes, rather than to the sentence actually imposed. *Lindsey v. Washington,* 301 U.S. 397, 401, 81 L. Ed. 1182, 57 S. Ct. 797 (1937).

■ We hold that there is no ex post facto violation in this case because no greater punishment was imposed by the SRA than would have been the case had defendant been sentenced under the indeterminate sentencing system. Had he been sentenced under the indeterminate scheme, his minimum term for pre–SRA crimes would have been fixed by the independent sentencing review board; however, that decision necessarily would have been made by application of SRA standards. *See In re Myers,* 105 Wn.2d 257, 268, 714 P.2d 303 (1986); *Addleman,* 107 Wn.2d at 409, 511-12; RCW 9.95.009(2). Because no greater standard of punishment was imposed by application of the SRA, there was no ex post facto violation.

Alternatively, Brown argues that the trial court erred in imposing an exceptional sentence because "the facts relied upon in doing so were not supported by the record," and "the court's reasons did not justify the imposition of a sentence outside the presumptive range." *See* RCW 9.94A-.210(4)(a). Defendant's pro see brief also asserts that the sentence was clearly excessive. RCW 9.94A.210(4)(b).

The trial court may impose a sentence outside the standard range if it finds there are "substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A-.120(2). Whenever an exceptional sentence is imposed, the trial court must set forth the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.120(3). RCW 9.94A.390 lists factors the court may consider in the exercise of its discretion, but these factors

are illustrative only and are not to be considered exclusive. *State v. McAlpin,* 108 Wn.2d 458, 463, 740 P.2d 824 (1987); *State v. Nordby,* 106 Wn.2d 514, 516, 723 P.2d 1117 (1986).

▎ Appellate review of exceptional sentences is governed by three inquiries. The first task is to determine whether the trial court's reasons for imposing an exceptional sentence are supported by the record. This is a factual inquiry and the trial court's findings will be upheld unless they are "clearly erroneous." *McAlpin,* 108 Wn.2d at 462; *Nordby,* 106 Wn.2d at 517–18.

Second, once we determine that there is sufficient evidence in the record to support the court's reasons for imposing an exceptional sentence, we independently must determine, as a matter of law, whether the trial court's findings justify an exceptional sentence. *McAlpin,* 108 Wn.2d at 463; *Nordby,* 106 Wn.2d at 518.[11] The reasons given must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense. *State v. McAlpin, supra; State v. Nordby, supra.*

The trial court's findings state, in summary, that (1) the victim was from a broken home, and was particularly anxious to please adults; (2) the defendant was the victim's primary daytime caretaker and had "private access" to the victim on a daily basis; (3) the victim was subjected to repeated and varied sexual abuse beginning at the age of 5, and the abuse took place in the home; (4) the defendant persuaded the victim not to reveal the abuse; (5) the abuse

---

[11]The trial court need articulate only one "substantial and compelling" reason for imposing an exceptional sentence. *State v. Fisher,* 108 Wn.2d 419, 429, 739 P.2d 683 (1987). However, when the sentencing court sets forth several reasons justifying an exceptional sentence, and the appellate court invalidates factors upon which the sentencing court placed considerable weight, remand for resentencing may be appropriate. *Fisher,* at 430 n.7; *State v. Dunaway,* 109 Wn.2d 207, 219–20, 743 P.2d 1237, 749 P.2d 160 (1987) (remand for resentencing appropriate where the difference between the sentence imposed and the midpoint of the standard range is too great to assume the sentencing judge would impose the same sentence if only the single justifiable reason not invalidated by the appellate court were considered).

caused the victim substantial and lasting psychological damage; and (6) the defendant acted deliberately and intentionally, without mitigating circumstances. Based upon these findings, the court concluded that the following reasons, among others, justified the exceptional sentence: (1) the victim was particularly vulnerable due to age and the circumstances by which the defendant kept her entrapped in a cycle of abuse; (2) the defendant's conduct exhibited deliberate mental cruelty; (3) the defendant utilized a position of trust to facilitate his crimes; and (4) that the offenses for which the defendant was convicted involved multiple incidents with the same victim over a 5–year period.

We find ample evidence in the record to support the trial court's factual findings. They are not "clearly erroneous." Thus, we turn our attention to whether those findings support the reasons cited by the trial court as justifying the exceptional sentence.

Particular Vulnerability. The Washington Supreme Court has recognized that a victim's particular vulnerability because of extreme youth may be a valid reason for imposing an exceptional sentence for the crime of indecent liberties. *State v. Fisher, supra.* The court rejected the argument that the Legislature had already considered the victim's age in the presumptive range by including a requirement that the victim be less than 14 years of age. The court reasoned that, although a statutory requirement that a victim be younger than a certain age might indicate that the Legislature considered younger victims more vulnerable than victims generally, it could not have considered the particular vulnerabilities of specific individuals. *State v. Fisher,* 108 Wn.2d at 424; *see also State v. Tunell,* 51 Wn. App. 274, 282, 753 P.2d 543 (1988).

▮ We hold that the trial court did not err by relying on Tammy's vulnerability to justify the exceptional sentence. The court found that the defendant began abusing the victim at an extremely young age, and that he perpetuated the abuse by psychological means designed to keep the victim

within the cycle of abuse. It also cited the particular psychological makeup of the child as a factor that supported a finding of particular vulnerability. All of these factors support the court's conclusion that Tammy was particularly vulnerable, which is a substantial and compelling reason justifying the exceptional sentences imposed.[12]

■ Utilizing a Position of Trust To Facilitate Crime. The trial court also properly relied on the defendant's use of his relationship with Tammy to facilitate his crimes. Brown was the primary caretaker for Tammy in the afternoons, when the abuse generally occurred. Additionally, he used the victim's affection for him and her desire to keep her family intact as a means to perpetuate the abusive relationship. These factors indicate that the defendant abused a position of trust to facilitate his crimes, a factor that previously has been recognized as justifying an exceptional sentence in the context of sexual abuse of children. *See Fisher*, 108 Wn.2d at 427–28. We hold that this, too is a substantial and compelling reason which justifies the exceptional sentences in this case.

Multiple Incidents. The defendant cites the "real facts" doctrine, RCW 9.94A.370(2), to support his assertion that the sentencing court could not consider incidents constituting uncharged or unproven crimes as an aggravating factor. He contends that, since he was convicted of multiple offenses, use of "multiple incidents" as an aggravating factor is inappropriate. We disagree.

Former RCW 9.94A.370(2) specifically prohibited reliance on "real facts" that establish elements of additional crimes to sentence outside the presumptive range. *See State v. Harp, supra.* However, exceptions to the "real facts" doctrine have been carved out judicially. *See State v. Cook*, 52 Wn. App. 416, 420, 760 P.2d 964 (1988). One such

---

[12]We note that the defendant's familial relationship with Tammy and his role as caretaker are also factors relevant to the determination of particular vulnerability. *See State v. Harp*, 43 Wn. App. 340, 343, 717 P.2d 282 (1986); *State v. Shepherd*, 53 Wn. App. 194, 199, 766 P.2d 467 (1988).

exception was set forth in *State v. Armstrong*, 106 Wn.2d 547, 723 P.2d 1111 (1986). There, the Supreme Court sanctioned the use of the "multiple . . . incidents per victim" factor listed in former RCW 9.94A.390(3)(a), previously applied only in economic offenses, to justify an exceptional sentence in a case of multiple incidents of assault. *Armstrong*, 106 Wn.2d at 550.

As was the case in *Cook*, we believe an exception is warranted under these facts as well. As previously noted, "resident child molester" cases are among the most difficult to prosecute, in large part because usually there are no witnesses except the victim, for whom the experience is often an indistinguishable blur he or she has tried to forget. Consequently, these cases present problems of proof that make multiple charges impractical. However, these problems should not benefit the defendant at sentencing. When there is proof of multiple incidents, we think the proportionality goals of the SRA are better served by consideration of those incidents in the sentencing decision.[13]

Additionally, we do not believe that *State v. Fisher, supra*, requires a different result. In *Fisher*, the Supreme Court disapproved of the use of multiple incidents as an aggravating factor when the incidents relied on constituted the counts of which the defendant was separately convicted. *Fisher*, 108 Wn.2d at 425. Because those convictions were considered in determining Fisher's criminal history to compute his offender score and the presumptive sentencing range under former RCW 9.94A.400(1)(a), they inappropriately were considered as a reason justifying an exceptional sentence. *Fisher*, 108 Wn.2d at 426.

---

[13]This is especially so in light of recent amendments to RCW 9.94A.370(2) and .390. The SRA's list of aggravating factors now includes the following factor: "The offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time". RCW 9.94A.390(2)(e) (Laws of 1987, ch. 131, § 2). The Legislature also expressly recognized that this factor is a proper exception to the "real facts" doctrine. *See* RCW 9.94A.370(2) (Laws of 1987, ch. 131, § 1).

Such was *not* the case here. Although Brown was convicted of multiple counts, his conviction *on each count* was based upon a single episode of a particular type of abuse, of which there was evidence of many acts. The jury was required to agree unanimously upon a single act to support each of the convictions; the additional incidents were not the basis for the convictions, and were not necessarily considered in determining Brown's presumptive sentencing range, as was true in *Fisher*. The trial court properly relied on evidence of multiple incidents as a substantial and compelling reason justifying the exceptional sentences.

In summary, we hold that each of these three reasons—which the record reflects were the principal reasons for the imposition of the 240–month sentence—was properly considered, supported by the record, and constituted a substantial and compelling reason for the exceptional sentences. We need not consider whether the fourth reason cited by the trial court, deliberate mental cruelty, also justified the sentence because even if it did not, we would find it unnecessary to remand for resentencing. We are confident the court would impose the same sentence even without considering this additional factor. *See Fisher,* 108 Wn.2d at 429 n.7; *Tunell,* 51 Wn. App. at 284.

■ Lastly, we inquire whether the sentence imposed on the defendant is "clearly excessive." A sentence will be deemed "clearly excessive" if it is shown to be clearly unreasonable, *i.e.,* discretion exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken. *State v. Oxborrow,* 106 Wn.2d 525, 531, 723 P.2d 1123 (1986). The trial court's reasons for imposing the exceptional sentences were substantial and compelling, and the record supports those reasons. Defendant's 240–month concurrent sentence was not "clearly excessive." The sentence is affirmed.

Finally, Brown contends that the trial court erred by failing to give him credit for the 83 days he served in California while fighting extradition. We agree.

RCW 9.94A.120(13) states:

> The sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced.

 The time Brown served in California was attributable only to the offenses for which he was convicted and sentenced; they were the sole reason for his confinement. We agree with the defendant's assertion that the plain language of the statute requires that credit be given for time served under these circumstances.

We have considered the remaining issues raised by the defendant and find them to have no merit. The defendant has not challenged the finding of probable cause for the search warrant; thus we decline to address his arguments regarding the sufficiency of the affidavit in support of the search warrant.

For the foregoing reasons, the judgment is affirmed on all counts and the cause is remanded with directions to modify the defendant's sentence by giving him credit for time served in California.

It is so ordered.

ALEXANDER, C.J., and PETRICH, J., concur.

Review denied at 114 Wn.2d 1014 (1990).