[No. 29039-8-I.   Division One.   October 26, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. R.P., *Appellant.*

664

*Elizabeth Govaerts* of *Washington Appellate Defender Association,* for appellant.

*William Hawkins, Prosecuting Attorney,* and *Leslie Riley Seffern, Deputy,* for respondent.

PER CURIAM. — R.P., a juvenile, appeals an order of disposition finding him guilty of two counts of indecent liberties.[1] Pursuant to RAP 18.12, the appeal was set for consideration before a panel of this court for accelerated review. Finding no error, we affirm.

FACTS

R.P. was charged in juvenile court with two counts of indecent liberties.[2] The charges arose from events occurring

---

[1]Although R.P. appeals the disposition entered on both counts of indecent liberties, his assignment of error relates solely to count 1 and he has thus waived any claim regarding count 2.

[2]The amended information provided in pertinent part as follows:
"COUNT I – INDECENT LIBERTIES
"That the said juvenile respondent, [R.P.], aka . . ., in Island County, Washington, on or about the 26th day of March, 1991, did knowingly cause another, to

during March of 1991, in which R.P. allegedly sexually assaulted C.C., a fellow classmate in junior high school, on two separate occasions. After a fact-finding hearing, the juvenile court entered the following relevant findings of fact:

2.1 On March 15, 1991 [R.P.] asked [C.C.] to take a walk outside of Bears. They did so and at some point or another during that walk [R.P.] physically restrained [C.C.] in such a manner that she was unable to get away from him for a period of time. He started kissing her. He held her wrists in such a manner that she was unable to get away from him, and continued to kiss her. At some point he attempted to and did reach up under her shirt and touched her breast and touched her buttocks area and attempted to touch her in the frontal part of her groin area, but was restrained in that regard by [C.C.]. During this period of time [R.P.] was restraining her against her will and she was unable to break free at that time. She later did extricate herself from the situation and she and the juvenile respondent went back into Bears.

2.2 On March 26, 1991 after track practice [R.P.] and [C.C.] were together alone waiting for their respective rides. [R.P.] approached [C.C.]. At some time during their contact with one another he picked her up against her will and placed her down in an area where he hugged and kissed her and eventually placed what is commonly known as a hickey or passion mark on her right neck area. The mark continued to be visible for over a week's time. [R.P.] was restraining [C.C.] at the time the alleged unlawful conduct was occurring.

. . . .

2.5 Sexual contact means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party. [R.P.] did all of the things that he is charged with doing to [C.C.] for the purpose of gratifying his sexual desire. This wasn't a joking around or teasing thing. He was sexually attracted to [C.C.] and he hugged and kissed her and did the other things for the purpose of gratifying sexual desire.

wit: [C.C.], who was not his spouse, to have sexual contact with him by forcible compulsion, in violation of RCW 9A.44.100(1)(a), and against the peace and dignity of the State of Washington.

"COUNT II – INDECENT LIBERTIES

"That the said juvenile respondent, [R.P.], aka . . ., in Island County, Washington, on or about the 15th day of March, 1991, did knowingly cause another, to wit: [C.C.], who was not his spouse, to have sexual contact with him by forcible compulsion, in violation of RCW 9A.44.100(1)(a), and against the peace and dignity of the State of Washington."

2.6 [R.P.] on or about March 15, 1991 touched the intimate parts of [C.C.] by placing his hands on her buttocks. On or about March 26, 1991 [R.P.] had sexual contact by forcible compulsion with [C.C.] by kissing her on the neck.

Based on these findings, the court concluded that R.P. was guilty as charged. This appeal followed.

## I

R.P. challenges the sufficiency of the evidence to sustain the disposition finding him guilty of indecent liberties as charged in count 1 of the amended information. R.P. argues that the State failed to prove an essential element of indecent liberties. "Due process requires that the State bear the burden of proving each and every element of the crime beyond a reasonable doubt." *State v. Aver*, 109 Wn.2d 303, 310, 745 P.2d 479 (1987).

■ In reviewing a challenge to the sufficiency of the evidence, the test is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Grover*, 55 Wn. App. 923, 930, 780 P.2d 901 (1989), *review denied*, 114 Wn.2d 1008 (1990); *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980); *see Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *State v. Spruell*, 57 Wn. App. 383, 385, 788 P.2d 21 (1990).

## II

In order to find R.P. guilty of the offense charged, the State was required to prove that R.P. had sexual contact with C.C. by forcible compulsion. RCW 9A.44.100(1)(a).[3] R.P. contends that the State failed to prove the sexual contact element of indecent liberties. "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a

---

[3]"A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

"(a) By forcible compulsion . . . ".

person done for the purpose of gratifying sexual desire of either party". RCW 9A.44.010(2).

■ R.P. argues that C.C.'s neck is neither a sexual nor intimate part of her body. He points out that the surface of the neck is often exposed to public view and, therefore, should not be treated as an intimate part of the human body. This argument necessarily assumes, however, that the trier of fact must focus solely on the anatomical areas of the victim which have been touched by the defendant to establish the sexual contact element of indecent liberties. Sexual contact may also occur in cases where the victim is compelled to come into contact with the sexual or other intimate parts of the defendant. As stated by one legal scholar,

> Sexual conduct may constitute a crime even though it falls short of sexual intercourse or deviate sexual intercourse and even though no intercourse was intended. A term commonly used to characterize such conduct is "sexual contact." In accordance with a typical definition, "sexual contact" means "the intentional touching of a victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse."

3 C. Torcia, *Wharton on Criminal Law* § 298, at 105-06 (14th ed. 1980).

In *State v. Brown*, 55 Wn. App. 738, 780 P.2d 880 (1989), *review denied*, 114 Wn.2d 1014 (1990), the defendant was convicted of indecent liberties for having his child victim operate a vacuum device known as a "penis enlarger". On appeal, the defendant argued that there was no evidence of sexual contact between him and his victim. The court disagreed and held:

> The sexual contact between [defendant] and [his victim] was achieved by an instrumentality which served as an extension of the person. We see no difference between such activity [and] fondling a child with a gloved hand. We are satisfied that Brown's conduct is of the type the Legislature intended to proscribe.

(Footnote omitted.) *State v. Brown, supra* at 745.

Implicit in *Brown* is that the statutory requirement of sexual contact may be satisfied if the defendant forces the victim to have contact with the sexual or other intimate parts of the defendant. That result is clearly consistent with the definition of sexual contact set forth in RCW 9A.44-.010(2). As noted earlier, "sexual contact" means the touching of the sexual or other intimate parts of a "person" done for purposes of sexual gratification. The statute draws no distinction between whether the victim's intimate parts are touched by the defendant or the defendant's intimate parts are touched by the victim. The only requirement is that the touching must be done "for the purpose of gratifying sexual desire of either party". Thus, the determinative issue here remains whether an "intimate part" of the human body was touched when R.P. kissed C.C. on her neck.

### III

"The determination of which anatomical areas apart from the genitalia and breasts are intimate is a question to be resolved by the trier of the facts." *In re Adams*, 24 Wn. App. 517, 520, 601 P.2d 995 (1979). That determination is not, however, left solely to the unfettered discretion of the trier of fact. In *In re Adams*, *supra*, the court interpreted the term "intimate parts" to have a broader connotation than the word "sexual" and to include parts of the anatomy "in close proximity to the primary erogenous areas". *In re Adams*, *supra* at 519-21. *See also State v. Powell*, 62 Wn. App. 914, 917 n.3, 816 P.2d 86 (1991), *review denied*, 118 Wn.2d 1013 (1992).

The term "intimate parts" is not specifically defined in the criminal code. Nevertheless, "[t]he rule of ejusdem generis provides that specific terms modify and restrict general terms where both are used in sequence." *State v. Young*, 63 Wn. App. 324, 331, 818 P.2d 1375 (1991). Under RCW 9A.44-.010(2), the area touched must be "the sexual or other intimate parts of a person" to constitute sexual contact. Given this sequence, the phrase "intimate parts" must refer to parts of the human body commonly associated with sexual

intimacy. *See State v. Woodley*, 306 Or. 456, 461, 760 P.2d 884, 886 (1988) (" 'Intimate parts' are more than 'sexual parts,' but in context the words refer to parts that evoke the offensiveness of unwanted sexual intimacy, not offensive touch generally.").

## IV

Here, it is undisputed that R.P. kissed C.C. on the neck. Stated another way, C.C.'s neck was forced to come into direct physical contact with R.P.'s lips. The lips are a part of the human anatomy which are often associated with acts of sexual intimacy. Given the extremes of individual and cultural standards regarding the common social custom of kissing, lips can be an intimate part of the body under RCW 9A.44.010(2). Since sexual contact in this case is measured in terms of what is "intimate", the offensiveness of the contact may ultimately depend upon not only the area of the body touched but also the duration of the contact. The kiss in this case lasted long enough to leave a bruise on C.C.'s neck. The trial court concluded that R.P. had sexual contact with C.C. by engaging in this type of conduct.[4] While there may be many occasions in which the act of kissing a person on the neck would not constitute the offense of indecent liberties, the trial court here did not err in finding R.P. guilty of indecent liberties. *See State v. Allen*, 57 Wn. App. 134, 138-39, 788 P.2d 1084 (1990).

The disposition is affirmed.

Reconsideration denied February 18, 1993.

Review granted and affirmed in part and reversed in part at 122 Wn.2d 735 (1993).

---

[4]The record shows that the trial court was clearly troubled over the definition of sexual contact as it applied to the facts of this case. Only after a thorough discussion of the matter did the trial court find R.P. guilty of the charged offense.