IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31544-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AARON T. ANDLOVEC, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Aaron Andlovec was convicted of child molestation and two counts of rape for persistently sexually assaulting a 13- and later 14-year-old girl, A.C. On appeal, Andlovec contends that the trial court should have provided a *Petrich* instruction that would require the jury to unanimously decide on what discrete date the various criminal counts occurred. He also complains about his sentencing order that precludes alcohol related conduct while on community custody. Since Andlovec engaged in a series of sexual attacks, we reject his claim that he was entitled to a *Petrich* instruction. We modify the prohibition involving alcohol during community custody.

## FACTS

From 2008 to 2010, Defendant Aaron Andlovec lived with his cousin Bryan Jones. Jones' stepdaughter, A.C., born December 16, 1995, also lived in the home. The 37-year-old Andlovec pursued a sexual relationship with 13-year-old A.C.

Aaron Andlovec first touched A.C.'s vagina when she was 12 or 13 years old while they watched a movie together. At trial, A.C. could not remember precisely when this occurred, stating, "I think I was in school perhaps. I don't know. It may have been summer maybe." Report of Proceedings (RP) at 101. A.C. further testified:

> Q: Who initiated the contact?
> A: Usually, it was Aaron. Well, I would just be sitting there kind of, and it would be like—I don't know. We have like a normal conversation about like whatever, and then I don't know. He would just start like rubbing my leg again, and it would progress on, and I didn't—I don't know. I never really said anything.
> Q: When you say it would progress on, again, can you be specific?
> A: Yeah. I don't know. It would begin with rubbing my legs, and then he put his hand up my shirt, and then eventually it led on to sex.

RP at 101.

The sexual abuse included Andlovec touching A.C.'s breasts, legs, and arms, and vaginal intercourse. The two always had intercourse in A.C.'s bed, located in the upstairs of the house. Andlovec and A.C. had sex about twice a week for one year. Bryan Jones, Aaron Andlovec's cousin, testified that when Andlovec and A.C. were upstairs, he either worked, slept, or played the video game World of Warcraft.

On May 19, 2010, A.C. told her mother that Andlovec raped her. A.C.'s mother

2

informed police. As part of their investigation, police took the top of a mattress from the home. Subsequent testing showed that the mattress contained A.C.'s deoxyribonucleic acid (DNA) and Andlovec's semen.

## PROCEDURE

On June 22, the state of Washington charged Aaron Andlovec with three separate counts: rape of a child in the second degree occurring between September 1 and December 15, 2009; child molestation in the second degree occurring between September 1 and December 15, 2009; and rape of a child in the third degree occurring between December 16, 2009 and May 17, 2010. The charges were based on RCW 9A.44.076 (rape of child at least 12 but less than 14 years old), RCW 9A.44.086 (molestation of a child at least 12 but less than 14 years old), and RCW 9A.44.079 (rape of a 14 to 16 year old) respectively. A.C. was 13 years old for counts one and two, and 14 years old for count three based on her December 16 birthday. For each count, the State charged Andlovec with committing the offense as part of an "ongoing pattern of sexual abuse" under RCW 9.94A.535(3)(g), which reads:

> (3) Aggravating Circumstances—Considered by a Jury—Imposed by the Court
>     Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. Such facts should be determined by procedures specified in RCW 9.94A.537.
>     . . . .
>     (g) The offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time.

3

No. 31544-4-III
*State v. Andlovec*

At trial, Aaron Andlovec testified in his defense. He denied having sex or any sexual contact with A.C. Andlovec claimed that he masturbated while watching adult movies on A.C.'s bed, and also engaged in sex with A.C.'s mother on A.C.'s bed. Andlovec pointed to these actions to explain why his semen was found on A.C.'s mattress.

In closing, the State argued:

> Aaron Andlovec was a trusted family member, a cousin of [A.C.'s] stepfather. He came into the house. He befriended [A.C]. They talked at great length. He knew about her school functions. He knew, in fact, that she was a middle schooler, not even yet in eighth grade. He knew that it was the summer between her seventh grade and eighth grade years at [middle school], and he befriended her.
>
> They shared secrets. They played together. He helped her with homework, and he had sex with her. He had sex with her many, many times, week after week and month after month, and this happened multiple times a week sometimes. From September of 2009 until the discovery in May of 2010, Aaron Andlovec had sex with thirteen and then fourteen year old [A.C.].
>
> . . . .
>
> You can listen to the evidence, and you can weigh it. You can listen to [A.C.'s] recollection of the many times Aaron Andlovec had sex with her, and you recall the details, and she was clear, and she was I guess encouraged to give details about what happened, but she testified that it was penile/vaginal. His penis inside of her many times, and she told you what led up to it. Touching, closeness at first, a hand up her shirt and eventually leading to sex, an ongoing pattern of sex.
>
> . . . .
>
> Looking at the evidence in this case, evidence shows Mr. Andlovec was having sex with a 13 year old. Following her birthday, December 16th, he kept having sex with [A.C.] over and over. She was 14 then. Aaron Andlovec had sex with a 13 and 14 year old girl.

RP at 449, 450, 460.

4

The jury found Aaron Andlovec guilty on all three counts. For each count, the jury also found by special verdict that Andlovec committed each crime as part of an "ongoing pattern of sexual abuse." Clerk's Papers (CP) at 143, 145, 147. At sentencing, the trial court imposed a condition of community custody stating that Andlovec "shall not use, possess or purchase alcohol, nor go to establishments where alcohol is the prime commodity for sale." CP at 171.

## LAW AND ANALYSIS

### *Unanimity Instruction*

Aaron Andlovec contends, for the first time on appeal, that the trial court should have instructed the jury that they must unanimously agree on which underlying act gave rise to criminal liability for each count charged. A defective verdict which deprives the defendant of a unanimous verdict invades the fundamental constitutional right to a trial by jury. The issue may, therefore, be raised for the first time on appeal. *State v. Fitzgerald*, 39 Wn. App. 652, 655, 694 P.2d 1117 (1985).

The law distinguishes between a "multiple acts" prosecution and a "continuing course of conduct" prosecution. A "multiple acts" prosecution tends to show evidence of acts that occur at different times, in different places, or against different victims. *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). A "continuing course of conduct" requires an ongoing enterprise with a single objective. *Love*, 80 Wn. App at 361. The nomenclature is misleading since a "continuing course of conduct" inevitably involves

5

multiple acts. The distinction between a multiple acts case and a continuing course of conduct case is critical, because in the former case the jury must be instructed and must find unanimously that discrete criminal acts occurred on specific dates.

To convict a person of a criminal charge, the jury must be unanimous that the defendant committed the criminal act. *State v. Camarillo*, 115 Wn.2d 60, 63, 794 P.2d 850 (1990); *State v. Bobenhouse*, 166 Wn.2d 881, 892, 214 P.3d 907 (2009). When the evidence indicates that several distinct criminal acts have been committed, but the defendant is charged with only one count of criminal conduct, jury unanimity must be protected. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *holding modified by State v. Kitchen*, 110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988). To protect unanimity, the State may elect which act it relies upon for conviction or the jury must be instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *State v. Barrington*, 52 Wn. App. 478, 480, 761 P.2d 632 (1988). Washington labels such a jury instruction a *"Petrich* instruction." The failure to do so in multiple acts cases is constitutional error. *Bobenhouse*, 166 Wn.2d at 893. The error stems from the possibility that some jurors may have relied on one act or incident and some jurors a different act, resulting in a lack of unanimity on all of the elements necessary for a valid conviction. *Kitchen*, 110 Wn.2d at 411.

Aaron Andlovec argues that the jury heard evidence of many sexually assaultive acts. He further contends he was entitled to a Petrich instruction because his prosecution is one for multiple acts.

The State agrees that it did not argue separate acts of sexual intercourse with A.C. The State instead argues that no unanimity instruction was necessary because Andlovec engaged in one "continuing course of conduct," which constituted three distinct crimes. *Petrich*, 101 Wn.2d at 571. We agree.

When the evidence shows the defendant was engaged in a "continuing course of conduct," the State need not make an election and the trial court need not give a unanimity instruction. *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). That the charged conduct occurred at different times and places tends to show that several distinct acts occurred rather than a continuing course of conduct. *Handran*, 113 Wn.2d at 17. Evidence of a single victim likewise is not enough in itself to demonstrate that the offense was one continuing offense. *Petrich*, 101 Wn.2d at 571. To determine whether one continuing offense may be charged, the facts must be evaluated in a common sense manner. *Petrich*, 101 Wn.2d at 571.

*Fitzgerald*, 39 Wn. App. at 655, supports Aaron Andlovec's position. The State charged Vincent Fitzgerald with two counts of statutory rape involving different victims. Each victim testified to multiple incidents of rape. We reversed the conviction since the jury returned a general verdict of guilty without specifying which underlying acts were

7

relied upon in reaching the decision. The trial court gave no *Petrich* instruction. The only connection between the incidents of rape was that the victims were the same. The connection was not enough to find that the offenses contained in each count constitute a single transaction.

*State v. York*, 152 Wn. App. 92, 95-96, 216 P.3d 436 (2009), also assists Aaron Andlovec. The *York* court ruled that the "continuing course of conduct" exception did not operate. The State charged the defendant with four counts of second degree rape of a child. The victim testified to three specific instances and a general pattern. The *York* court ruled that the failure to provide a *Petrich* instruction for count four was harmful error. Still, the *York* court conceded that the continuing course of conduct exception might apply in other circumstances.

*State v. Craven*, 69 Wn. App. 581, 588, 849 P.2d 681 (1993), presents the opposite outcome. Linda Craven repeatedly assaulted a child over the course of three weeks. The state charged Craven with one count of assault on the theory that Craven engaged in a systematic pattern of abusive conduct which lent itself to the continuing course exception. Finding no error with the trial court's failure to provide a *Petrich* instruction, the court commented in a footnote:

> We note that charging one count of assault for a continuous course of conduct seems particularly appropriate where, as here, the child victim is preverbal, the abusive conduct occurred outside the presence of witnesses, and no one could testify to any single act of abuse. Where evidence of the abuse can only come from a physical examination of the child, from the totality of the injuries, from an observation of the child's demeanor, and

from the circumstances surrounding the incident which brings the child to the attention of health care professionals, basing a conviction upon distinct criminal acts is not the only theory upon which to proceed. Indeed, a fact pattern which evidences systematic abuse particularly lends itself to a continuing course of conduct analysis.

*Craven*, 69 Wn. App. at 589 n.7.

A.C. was verbal. But the sexual assaults from Aaron Andlovec occurred outside the presence of others over a two-year period. Andlovec had easy access to A.C. Understandably, A.C. did not keep a diary with dates as to the assaults. Understandably she would wish to forget the specifics of each horrendous act. *York* is distinguishable because the State did not charge Aaron Andlovec with counts involving specific instances in addition to another count involving general harm.

Aaron Andlovec raped the same young girl on the same bed. In every instance, whenever Andlovec and A.C. had sex, he touched her legs, vagina, and breasts. His single objective was to have sex with A.C. That Andlovec molested A.C. as part of that one continuing course of conduct does not splinter his objective.

Our Supreme Court in *Petrich* entertained the possibility of the State charging a defendant with a continuous course of conduct instead of discrete acts for multiple acts against a child. In instructing courts on how "[t]o determine whether one continuing offense may be charged," the *Petrich* court impliedly condoned such a charge, if warranted under the circumstances. 101 Wn.2d at 571. The *Petrich* court commented:

[I]n the majority of cases in which this issue will arise, the charge will involve crimes against children. Multiple instances of criminal conduct

9

> with the same child victim is a frequent, if not the usual, pattern. . . . *Whether the incidents are to be charged separately or brought as one charge is a decision within prosecutorial discretion.* Many factors are weighed in making that decision, including the victim's ability to testify to specific times and places. Our decision in this case is not intended to hamper that discretion or encourage the bringing of multiple charges when, in the prosecutor's judgment, they are not warranted. The criteria used to determine that only a single charge should be brought, may indicate that the election of one particular act for conviction is impractical. In such circumstances, defendant's right to a unanimous verdict will be protected with proper jury instructions.

101 Wn.2d at 572 (internal citation omitted) (emphasis added).

Language from *State v. Brown*, 55 Wn. App. 738, 746, 780 P.2d 880 (1989) is apt.

The *Brown* court wrote:

> The *Petrich* rule was a modification of a rule first announced in *State v. Osborne*, 39 Wash. 548, 81 P. 1096 (1905), and later explained in *State v. Workman*, 66 Wash. 292, 119 P. 751 (1911). These cases required the prosecutor to elect which of several distinct crimes within the evidence and proof is relied on for conviction. *State v. Osborne*, 39 Wash. at 552; *State v. Workman*, 66 Wash. at 294. In more recent times, our courts have had occasion to reconsider whether the election rule strikes a proper balance between the defendant's rights and the problems presented in the prosecution of cases involving sexual molestation of children. It is in the context of such cases that the issues associated with evidence of multiple offenses and jury unanimity usually arise. *State v. Petrich*, 101 Wn.2d [566,] 572, [683 P.2d 173 (1984)]. Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse has occurred on a regular basis and in a consistent manner over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Moreover, because the molestation usually occurs outside the presence of witnesses, and often leaves no permanent physical evidence, the State's case rests on the testimony of a victim whose memory may be clouded by a blur of abuse and a desire to forget.

. . . .

In cases where the accused child molester virtually has unchecked access to the victim, neither alibi nor misidentification is likely to be a reasonable defense. The true issue is credibility. Brown's defense was not alibi or misidentification, but complete denial, coupled with an attack on [the victim's] credibility. The jury's task was to decide who was telling the truth, the defendant or the victim. In light of the fact that the jury was instructed that its verdict must be unanimous as to the offense relied on for conviction, we do not think more specificity in testimony was necessary for the jury to reach a proper verdict.

We think this holding strikes a proper balance of the competing interests involved in "resident child molester" cases. Rendering such testimony as was given here inadequate even under a unanimity instruction would force prosecutors to make an election that the *Petrich* court described as "impractical." With the exception of those who happen to select victims with better memories or who are 1-act offenders, the most egregious child molesters effectively would be insulated from prosecution. We cannot countenance such a result when alibi or misidentification is not raised as a defense.

55 Wn. App. at 747-49 (citations omitted).

We hold that for crimes against children, the prosecution may charge a defendant with a continuing course of conduct, and, in such cases, a *Petrich* instruction is unnecessary.

### Community Custody Condition for Alcohol

The trial court imposed the community custody condition that Aaron Andlovec "not use, possess or purchase alcohol, nor go to establishments where alcohol is the prime commodity for sale." CP at 171. Andlovec challenges this condition for the first time on appeal. However, established case law holds that illegal or erroneous sentences may be challenged for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452

11

(1999). This court reviews sentencing conditions for an abuse of discretion. *State v. Crockett*, 118 Wn. App. 853, 856, 78 P.3d 658 (2003). This court reverses only if the decision is manifestly unreasonable or based on untenable grounds. *State v. Williams*, 157 Wn. App. 689, 691, 239 P.3d 600 (2010).

As a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in chapter 9.94A RCW. RCW 9.94A.505(8). A "crime-related prohibition" is a restraint on "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). In turn, "[c]ircumstance" is defined as "[a]n accompanying or accessory fact." *Williams*, 157 Wn. App. at 692 (quoting BLACK'S LAW DICTIONARY 277 (9th ed. 2009)).

Nothing in the record relates alcohol to the circumstances of Andlovec's convictions. Therefore, 9.94A.505(8) cannot be the basis of the prohibition on alcohol.

As the State notes, the trial court holds discretion, under RCW 9.94A.703(3)(e), to order any offender to refrain from consuming alcohol, while on community custody. Thus, we uphold the sentence of Aaron Andlovec to the extent he is prohibited from drinking alcohol. The community custody condition at issue goes farther, however, and bans Andlovec from possessing or purchasing alcohol and from entering an establishment whose principal business is the service of alcohol. We hold that these additional provisions exceeds the trial court's statutory authority.

No. 31544-4-III
*State v. Andlovec*

CONCLUSION

We affirm Aaron Andlovec's three convictions, but remand this case with instructions to the trial court to strike those portions of the alcohol-related community custody condition that exceed RCW 9.94A.703.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

<br>

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

13