243 N.J. Super. 498 (1990)
580 A.2d 283
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES G. BUDIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1989.
Reargued December 19, 1989.
Decided September 14, 1990.
*499 Before Judges PRESSLER, LONG and LANDAU.
Dennis M. Mahoney argued the cause for appellant (Mahoney & Mahoney, attorneys).
Timothy Van Hise, Assistant Prosecutor, argued the cause for respondent (Nicholas L. Bissell, Jr., Somerset County Prosecutor, attorney).
John Kennedy, Deputy Attorney General, argued the cause for amicus curiae (Peter N. Perretti, Attorney General, attorney).
The opinion of the court was delivered by LONG, J.A.D.
*500 After a jury trial, defendant James G. Budis was convicted of two counts of sexual penetration on T.D., a child of less than thirteen years of age, contrary to N.J.S.A. 2C:14-2(a)(1). He was sentenced to concurrent custodial terms of fifteen years on each conviction. An appropriate Violent Crimes Compensation Board penalty was also imposed. Defendant appeals, claiming that the following errors warrant reversal:

POINT I:
DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION.
POINT II:
THE DEFENDANTS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND A FAIR TRIAL WAS VIOLATED BY THE TRIAL COURTS PREJUDICE.
POINT III:
THE DEFENDANTS FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION WAS VIOLATED BY THE INTRODUCTION INTO EVIDENCE OF HIS PRETRIAL STATEMENT.
POINT IV:
THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.
POINT V:
THE DEFENDANT SHOULD BE ADMITTED TO BAIL PENDING APPEAL.
We have carefully reviewed this record in light of the claims advanced by defendant and conclude that defendant was denied a fair trial because of an interpretation of N.J.S.A. 2C:14-7 which precluded admission of crucial defense evidence. Accordingly, we reverse and remand for a new trial. This ruling renders moot the remaining issues raised in defendant's brief.
In May 1988, T.D., who was then 10 years old, was playing a Nintendo game with a relative. The game featured two characters boxing. While playing the game, T.D. commented that it looked like one of the characters "was sucking the other guy *501 off." This comment was reported to her father, who confronted T.D. in order to discover where she had heard of such a thing. In response, T.D. mentioned the names of her former stepfather, H.D., and the defendant. The father, in turn, made a report to the Division of Youth and Family Services, which contacted the Somerset County Prosecutor.
An investigation was conducted by a detective from the Somerset County Prosecutor's Office, who met with T.D. and taped two statements. In the first statement, T.D. said that defendant, who is her father's cousin, was visiting on an evening in July 1987, when the family went swimming in the apartment complex pool at night. According to T.D., defendant took her back into the apartment to get changed, and once inside he placed his erect penis in her mouth and her vagina, but that nothing came out of his penis. She said that a few days later the family went to Dorney Park for her brother's birthday. Defendant went with them and slept over. During the night, he came into her bedroom and once again placed his erect penis in her mouth and her vagina.
The second statement referred to T.D.'s former stepfather, H.D. In her statement, T.D. said that on five or six occasions during the fall of 1986 while they were living in the same household, H.D. took her into his bedroom at night and placed his erect penis in her mouth and her vagina. She said that he did this for about an hour at a time, but that nothing came out of his penis. Upon questioning, H.D. admitted to three sexual encounters with T.D. He was indicted and subsequently pled guilty to one count of sexual assault and one count of aggravated sexual assault. He has since been sentenced.
On May 25, 1988, the detective sought to question the defendant about T.D.'s allegations. Defendant acknowledged that two sexual encounters with T.D. occurred during the previous summer but differed with T.D.'s description of the events. Defendant said that on the occasion of T.D.'s brother's birthday, he slept on the couch. Shortly after he went to sleep, he *502 awoke to find that T.D. had taken his penis "out through the side of my shorts and was jerking me off and then started licking and kissing" it; he pushed her away after "maybe five minutes at the most." Defendant said that on the other occasion, when he visited the apartment complex to go swimming, he went into the apartment by himself to get changed. When he had "stripped down", defendant noticed T.D. was behind him; she grabbed his penis and testicles and began to stroke and kiss them for about a minute. Defendant said that "[a]t that point, it felt good." On both occasions, defendant had an erection but did not ejaculate. Defendant said that he warned T.D. not to do anything like this again or he would have to tell her father. Defendant subsequently was arrested and indicted on two counts of sexual penetration in violation of N.J.S.A. 2C:14-2a(1).
At trial, the testimony of T.D. was essentially the same as her prior statements to the police. When defendant was confronted on cross-examination with his prior inculpatory answers, he gave these explanations. He said that his statement that what T.D. did to him after they went swimming "felt good" meant that "it didn't hurt." He also said that his description of what T.D. did when he woke up on the couch as lasting "maybe five minutes" was a figure of speech; it actually was only a few seconds before he pushed her away.
During discussions outside the presence of the jury, defense counsel indicated that he needed to elicit testimony as to the prior sexual abuse to which T.D. had been subjected by her stepfather in order to show sexual knowledge for the purpose of preventing the jury from dismissing outright defendant's testimony that a child would be inclined to initiate sexual contact. The trial judge ruled that the rape shield statute (N.J.S.A. 2C:14-7) precluded the admission of the evidence:
First of all I  I do not agree with the contention of defense counsel that you can show as to a child that which you couldn't show as to an adult woman. That to me is absolutely beyond belief. If an adult engaged in each of these alleged acts with an adult male, you could not show it in a charge of aggravated *503 sexual assault involving another and distinct different, different person. You would not be permitted. And it's urged to me that you should be permitted to do it with a child.
First of all, I will not permit any examination of this child with respect to any sexual activity other than the sexual activity charged in this indictment. Either by direct examination or cross-examination.
I will permit the examination of the detective within the limited area, to wit, did he investigate allegations of sexual abuse by her stepfather. And I will not permit the details of those  that alleged sexual abuse to be brought before this jury.
Defense counsel cross-examined T.D. on how she responded to her father's inquiry as to where she learned about sex:
Q. And then you finally said [the defendant] Uncle Jimmy, right?
A. Yes.
Q. Did you say anything else?
A. And Bud [her step-father].
Q. (Indicating not hearing.)
A. And Bud.
Q. And Bud?
A. Yes.
Q. That would be your stepfather?
A. He was, but he is not anymore.
Defense counsel also cross-examined the detective on his investigation:
Q. She related these incidents about Mr. Budis in 1987.
A. Yes.
Q. And she also related something about some incident in 1986 concerning somebody other than Mr. Budis; isn't that so?
MR. VAN HISE: Objection, your Honor.
THE COURT: I'll permit that.
A. Yes, sir.
Q. Involving her stepfather. Isn't that so?
MR. VAN HISE: Objection.
THE COURT: This will be the end of it. I will permit that question and the answer.
A. Yes, sir.
Q. And there's was 
THE COURT: Obviously, ladies and gentlemen, any prior incidents are not before you for your determination in the course of this trial.
Q. And there was an investigation by you into that as well.
A. Yes.
Q. Okay.
*504 Although the testimonial portion of the trial only lasted two days, the jury deliberated for one full day and for a portion of a second day before reaching a verdict.
The Sixth Amendment to the United States Constitution guarantees the right of the accused in a criminal prosecution "to be confronted with the witnesses against him." This right has been extended by the Fourteenth Amendment to protect the accused in state proceedings. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); State v. Williams, 182 N.J. Super. 427, 434, 442 A.2d 620 (App.Div. 1982). Art. 1, par. 10 of the New Jersey Constitution (1947) concomitantly provides that "in all criminal prosecutions the accused shall have the right ... to be confronted with the witnesses against him...." Confrontation means more than merely being allowed to address a witness physically. A primary interest secured by confrontation is the right to meaningful cross-examination. Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974) (citing Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965)). "Cross examination is the principal means by which the believability of a witness and the truth of his testimony are tested." Id. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353. The right to confront and cross examine witnesses is crucial to due process. In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). It is not, however, without limitation and may, "in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 308 (1973) (citing Mancusi v. Shibbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972)). See State v. Crandall, 120 N.J. 649, 577 A.2d 483 (1990). Whenever the right to confrontation is denied or diminished, the integrity of the factfinding process is called into question. Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969). Thus, the competing state interest must be closely examined and, even if legitimate, must give way *505 where the defendant's confrontation rights are directly implicated. Davis v. Alaska, supra.
In this case, defendant's request to inquire into the victim's prior sexual abuse was denied based upon N.J.S.A. 2C:14-7, New Jersey's so-called rape shield law which provides:
a. In prosecutions for aggravated sexual assault, sexual assault, aggravated criminal sexual contact, criminal sexual contact, or endangering the welfare of a child in violation of N.J.S. 2C:24-4, evidence of the victim's previous sexual conduct shall not be admitted nor reference made to it in the presence of the jury except as provided in this section. When the defendant seeks to admit such evidence for any purpose, he must apply for an order of the court before the trial or preliminary hearing, except that the court may allow the motion to be made during trial if the court determines that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence. After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that evidence offered by the defendant regarding the sexual conduct of the victim is relevant and that the probative value of the evidence offered is not outweighed by its collateral nature or by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim, the court shall enter an order setting forth with specificity what evidence may be introduced and the nature of the questions which shall be permitted, and the reasons why the court finds that such evidence satisfies the standards contained in this section. The defendant may then offer evidence under the order of the court.
b. In the absence of clear and convincing proof to the contrary, evidence of the victim's sexual conduct occurring more than 1 year before the date of the offense charged is presumed to be inadmissible under this section.
c. Evidence of previous sexual conduct shall not be considered relevant unless it is material to negating the element of force or coercion or to proving that the source of semen, pregnancy or disease is a person other than the defendant. For the purposes of this section, "sexual conduct" shall mean any conduct or behavior relating to sexual activities of the victim, including but not limited to previous or subsequent experience of sexual penetration or sexual contact, use of contraceptives, living arrangement and life style.
Rape shield laws have been enacted in 48 of the 50 states, including New Jersey; the Federal Rules of Evidence and the Code of Military Justice also embody the principle, as does the *506 common law of the two states which have not enacted a rape shield statute.[1] In general, these laws operate to protect rape victims from the humiliation of unwarranted public disclosure of the details of their prior sexual activity. Tanford and Bocchino, "Rape Shield Laws and the Sixth Amendment," 128 U.Pa.L.Rev. 544 (1980). By their enactment, a victim's moral character is eliminated as an issue in a rape case and evidence of unchastity is precluded as a way of impeaching a victim's credibility. "In enacting rape-shield legislation, reformers sought to remove sexist assumptions from the fact-finding process, putting to rest the common-law notions that unchaste women are more likely to consent and to lie under oath than their virtuous sisters." Galvin, "Shielding Rape Victims in the *507 State and Federal Courts: A Proposal for the Second Decade," 70 Minn.L.Rev. 763 (1986).
Among the remedial aims of rape shield laws is the protection of victims from harassment and invasion of privacy; encouragement of sex crime reporting; and avoidance of juror confusion. All of these salutary aims are advanced by N.J.S.A. 2C:14-7. By enacting this rape shield law, our Legislature has adopted a view nearly universally accepted by courts, legislators and legal writers: that in a rape case evidence of a complainant's prior sexual conduct is generally irrelevant or if not entirely irrelevant, has a probative value which is substantially outweighed by countervailing factors such as prejudice. Thus, it can be said that this statute incorporates an important issue of public policy.
New Jersey initially addressed rape shield law concepts in N.J.S.A. 2A:84A-32.1:[2]
In prosecutions for the crime of rape, assault with intent to commit rape, and breaking and entering with intent to commit rape, evidence of the complaining witness' previous sexual conduct shall not be admitted nor reference made to it in the presence of the jury except as provided in this act. When the defendant seeks to admit the evidence for any purpose, he may apply for an order of the court at any time before or during the trial or preliminary hearing. After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that evidence offered by the defendant regarding the sexual conduct of the complaining witness is relevant, and that the probative value of the evidence offered is not outweighed by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the complaining witness, the court shall make an order stating what evidence may be introduced and the nature of the questions which shall be permitted. The defendant may then offer evidence under the order of the court.
While asserting a bar against the use of prior sexual conduct evidence this statute accorded the trial judge wide latitude in determining the admissibility of such evidence under traditional relevance rules on a case by case basis. In State v. Ryan, 157 *508 N.J. Super. 121, 384 A.2d 570 (App.Div. 1978), we sustained a trial judge's decision to prohibit defense inquiry into a rape victim's prior sexual conduct with a person other than the defendant on issues of consent and credibility and held that, as to those issues, defendant's confrontation and due process rights under Davis v. Alaska, supra; Chambers v. Mississippi, supra, and Pointer v. Texas, supra were not violated.
N.J.S.A. 2C:14-7 is much different from its predecessor, which did nothing more than require the trial judge to make an evaluation of the proffered prior sexual conduct evidence and allow its admission only if it met traditional relevancy standards and if its probative value was not outweighed by countervailing factors. On the contrary, although N.J.S.A. 2C:14-7 incorporates the provisions of N.J.S.A. 2A:84A-32.1 requiring the judge to make a relevancy determination and to evaluate the probative value of the proffered evidence, it precludes the judge from admitting evidence of prior sexual conduct unless it is material to "negating the element of force or coercion or to proving that the source of semen, pregnancy or disease is a person other than the defendant." By this formulation, New Jersey has joined 25 other states which generally proscribe the admission of prior sexual conduct evidence subject to very specific exceptions and allow no judicial discretion to admit unexpected evidence.[3] This formulation has been described as the "inflexible legislative rule" approach [Berger, "Man's Trial, Women's Tribulation: Rape Cases in the Courtroom," 77 Colum.L.Rev. 1, 32 (1977)] and has been characterized as a legislative effort to pre-determine
precisely those circumstances in which sexual conduct evidence is highly relevant and material to the presentation of a defense and, therefore, constitutionally required. [Galvin, supra, at 812].
*509 Indeed, our statute denominates its exceptions as relevancy judgments thus barring all but the excepted evidential classes as irrelevant per se. What makes the scheme problematic is the fact that relevance is not an inherent characteristic of any particular piece of evidence. It is rather the logical relationship between the proffered evidence and the material fact sought to be proved. Evid.R. 1(2). For this reason, a matter of relevance ordinarily "must be considered in the full factual setting...." Lowenstein v. Newark Bd. of Education, 35 N.J. 94, 105, 171 A.2d 265 (1961).
This is not to suggest that every general rule regarding the relevancy of evidence is invalid on its face. Where the same kind of evidence is frequently offered to prove the same material proposition, a standardized rule may be appropriate. Thus, for example, to the extent that our statute declares evidence of prior sexual conduct with third parties irrelevant to those issues on which it was traditionally admitted at common law, i.e., consent and lack of good moral character, it is not objectionable. The problem arises out of the Legislature's undertaking to anticipate, predict and prescribe every single factual context in which sexual conduct evidence might be relevant to a legitimate theory of defense. Without a fail-safe mechanism allowing the trial judge discretion to admit critical defense evidence which is not the subject of an exception, statutes like ours have the potential, as applied, to conflict with a defendant's right to a fair trial. See Cannel, supra, Comments 2, 4.
Whether this is the case depends upon resolution of the issue of whether and to what extent unexpected prior sexual conduct evidence is relevant and necessary to the defense. This requires an assessment of the proffer in light of the record, leaving aside for the moment any consideration of the statute. Here, the jury was presented with what was essentially a two-witness case. Although other witnesses testified, the outcome depended on whether the jury believed the victim or the defendant. Clearly, if the jury believed the victim there was ample evidence to support the verdict. However, there was *510 also evidence elicited during trial which, if believed by the jury, could have warranted defendant's acquittal on one or both of the counts against him. This consisted of defendant's version of the two sexual encounters as having been entirely initiated by T.D. and his testimony that he immediately rejected her advances.
The problem with defendant's version of the events is the probable jury skepticism over the suggestion that a nine-year-old would know enough about sex to initiate such encounters. The reason why defendant proffered the evidence of the victim's prior sexual initiation through sexual abuse by her step-father was to dispel the devastating implication that this child of tender years could not have known of such intimate sexual acts unless they occurred at defendant's initiation. Contrary to the State's argument that this was irrelevant, we think an exquisitely important piece of evidence was excluded from the jurors' consideration.
We are not alone in this view. In State v. Howard, 121 N.H. 53, 426 A.2d 457 (1982), the Supreme Court of New Hampshire analyzed a similar issue this way:
We believe that the average juror would perceive the average twelve-year-old-girl as a sexual innocent. Therefore, it is probable that jurors would believe that the sexual experience she describes must have occurred in connection with the incident being prosecuted; otherwise, she could not have described it. However, if statutory rape victims have had other sexual experiences, it would be possible for them to provide detailed, realistic testimony concerning an incident that may never have happened. To preclude a defendant from presenting such evidence to the jury, if it is otherwise admissible, would be obvious error. [Howard, 426 A.2d at 462.]
The Washington Court of Appeals ruled in an analogous case as follows:
Using this approach, our first inquiry is whether the evidence of prior sexual abuse was relevant. Defendant offered the evidence, not to attack the character of the little girls, but rather to rebut the inference they would not know about such sexual acts unless they had experienced them with defendant. Without the evidence the jury logically could draw the inference that they were conversant with such things only because defendant was guilty as charged. Consequently, the evidence was extremely relevant to defendant's defense, and its exclusion unfairly curtailed defendant's ability to present a logical explanation *511 of the victim's testimony. [State v. Carver, 37 Wash. App. 122, 678 P.2d 842, 843-844 (1984).]
Like results were reached in Summitt v. State, 101 Nev. 159, 697 P.2d 1374 (1985) and People v. Ruiz, 71 A.D.2d 569, 418 N.Y.S.2d 402 (App.Div. 1979). See also State v. Jacques, where the Maine Supreme Court opined that:
Where the victim is a child, as in this case, the lack of sexual experience is automatically in the case without specific action by the prosecutor. A defendant therefore must be permitted to rebut the inference a jury might otherwise draw that the victim was so naive sexually that she could not have fabricated the charge. A number of jurisdictions with similar rules permit the admission of evidence of prior sexual activity for the limited purposes of rebutting the jury's natural assumption concerning a child's sexual innocence and of protecting the defendant's rights. Commonwealth v. Ruffen, 399 Mass. 822, 507 N.E.2d 684 (1987); State v. Peterson, 35 Wash. App. 481, 667 P.2d 645 (1983); State v. Carver, 37 Wash. App. 122, 678 P.2d 842 (1984); State v. Baker, 127 N.H. 802, 508 A.2d 1059 (1986). [Jacques, 558 A.2d 706, 708 (Me. 1989).]
The most recent decision on point is State v. Pulizzano, 456 N.W.2d 325, decided by the Wisconsin Supreme Court on June 12, 1990. There the trial judge, relying on Wisconsin's rape shield law, prohibited the admission of evidence that the child victim had previously been sexually assaulted. The evidence was proffered for the purpose of explaining that the victim had an alternate source of sexual knowledge. The Wisconsin Supreme Court held that although the statute barred the admission of the evidence, it was not unconstitutional on its face. However, according to the court, the statute, as applied, impermissibly infringed on defendant's rights to confrontation and compulsory process, which prevailed over the state's interest in promoting effective law enforcement. The court concluded that
to establish a constitutional right to present otherwise excluded evidence of a child complainant's prior sexual conduct for the limited purpose of proving an alternative source of sexual knowledge, prior to trial the defendant must make an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect. [Pulizzano, supra, 456 N.W.2d at 335.]
*512 But see State v. Clarke, 343 N.W.2d 158 (Iowa 1984); People v. Arenda, 416 Mich. 1, 330 N.W.2d 814 (1982).
Here, the State concedes that the prior acts did occur and that they closely resembled those in the present case. In fact, T.D. used nearly identical language to describe the events. However, the State disagrees as to the relevance and necessity of the evidence to the defense. The State's main argument is that the point of the proffer was to prove the victim's actual conduct on a given occasion based upon prior specific acts contrary to Evid.R. 47. This is not correct. The point of the evidence was not the victim's activity but her capacity to have acted as defendant says she did. Thus, it was offered not to invoke an inference as to how the victim behaved on the date of the crime but to establish a source of knowledge or familiarity with sexual matters under circumstances in which lack of knowledge and a concomitant lack of capacity to act was the likely inference which would be drawn by the factfinder.
The State also urges that this is unlike the out-of-state cases in which the issue was decided in favor of admissibility because defendant did not wholly deny the events. The argument fails because here, as in the case of absolute denial, fabrication by the child witness was the focus of the defense. The issue was not motive to fabricate but the possession of knowledge which provided ability to do so. For this purpose the excluded evidence of prior sexual assaults identical to those charged against defendant was crucial to defendant's cause.
The State finally urges that the admission of this evidence would "gut the core protection of the statute, and defeat all of the legitimate interests protected by it." We disagree. In our view, its admission would not violate any of the overall remedial goals of the rape shield law. The evidence was not offered to establish any of the classic inferences the law was meant to interdict. Inclination to consent was not an issue in the case because of the victim's age. Further, the proffered testimony as to T.D.'s prior victimization did not implicate her own "conduct" *513 and could not place her moral character in issue in any way. See State v. Carver, supra. It was unlikely to prejudice her in the jury's eyes. Indeed, the contrary is true. Sympathy for her plight was the more likely response. Nor would it have confused the jury. Rather, it would have tended to explain what might otherwise appear unexplainable  how a nine-year-old child could have learned of the details of sexual intimacies other than from the defendant. The admission of the evidence would not have inhibited the reporting of abuse cases because children generally are not aware of the legal consequences of reporting. Likewise, because of the limited purpose for which evidence was offered, embarrassment or harassment of the victim was unlikely. Indeed, this evidence could have been elicited from another witness testifying as to T.D.'s statements, from the official documents involving T.D.'s step-father's convictions, or by stipulation, in any event with an appropriate limiting instruction.[4] In sum, not only would the "core protection" of the statute not be gutted, but none of the policy considerations informing the statute would be diminished by the admission of this evidence.
We conclude that, as applied to bar the admission of what we view as crucial defense evidence, N.J.S.A. 2C:14-7 violated defendant's Sixth Amendment rights. While we recognize the virtue of the rape shield law and the state's important interest in the protection of rape victims and especially of children and perceive no facial defect in the statute, where evidence of a victim's prior sexual conduct is highly relevant and probative of a fact other than moral character or inclination to consent, a defendant's right to present it is constitutionally *514 protected.[5] Thus, consistent with Chambers and Davis, this defendant's confrontation rights required that evidence of T.D.'s prior victimization be admitted notwithstanding that the evidence would otherwise have been excluded by the rape shield law.
We emphasize that our holding here is not meant to detract from the importance of the general principles embodied in N.J.S.A. 2C:14-7. In so doing, we affirm that evidence of a victim's prior sexual conduct with a person other than defendant is irrelevant either to prove a lack of moral character bearing on her credibility or on the issue of whether she *515 consented to defendant's advances. We also affirm the need for the trial judge to assiduously evaluate proffered defense evidence in terms of relevance and in terms of the traditional requirement that its probative value not be outweighed by countervailing factors.[6] Even where a determination of admissibility is made, we underscore the need for the trial judge to swiftly and unequivocally circumscribe cross-examination of a victim which is unnecessarily repetitive and harassing. We hold only that N.J.S.A. 2C:14-7 cannot be read in such a way as to deny a defendant a right to a fair trial. Here, that means that evidence of this child victim's prior sexual abuse should have been admitted to rebut the inference that she could not have known of the sexual experiences she described unless they occurred in connection with the incident being prosecuted.
We cannot speculate as to how the jurors would have viewed this evidence. But as triers of fact and as sole judges of credibility of the witnesses, they were entitled to know that there was an alternative source for T.D.'s sexual knowledge in order to make an informed judgment as to the credibility of her testimony and as to the guilt or innocence of this defendant.
We reverse and remand this case for a new trial consistent with this opinion.
NOTES
[1] Fed.R.Evid. 412; Mil.R.Evid. 412; Ala. Code § 12-21-203 (Supp. 1985); Alaska Stat. § 12.45.045 (Supp. 1985); Ark.Stat.Ann. § 41-1810.1-4 (1977 & Supp. 1985); Cal.Evid.Code §§ 782, 1103(b) (West Supp. 1986); Colo. Rev. Stat. § 18-3-407 (1978); Conn. Gen. Stat. Ann. § 54-86f (West 1985); Del. Code Ann. tit. 11 §§ 3508, 3509 (1979); Fla. Stat. Ann. § 794.022(2)-(3) (West Supp. 1985); Ga. Code Ann. § 24-2-3 (1985); Hawaii R.Evid. 412; Idaho Code § 18-6105 (1979); Ill. Ann. Stat. ch. 38, § 115-7 (Smith-Hurd Supp. 1985); Ind. Code Ann. § 35-37-4-4 (Burns 1985); Iowa R.Evid. 412; Kan. Stat. Ann. § 21-3525 (Supp. 1985); Ky.Rev.Stat. § 510.145 (1985); La. Rev. Stat. Ann. § 15:498 (West 1981); Me.R.Evid. 412; Md. Ann. Code art. 27, § 461A (1982); Mass. Ann. Laws ch. 233, § 21B (Law.Co-op. 1985); Mich. Comp. Laws Ann. § 750.520j (West Supp. 1985); Minn. R.Evid. 404(c); Miss. Code Ann. §§ 97-3-68, 97-3-70 (Supp. 1985); Mo. Ann. Stat. § 491.015 (Vernon Supp. 1986); Mont. Code Ann. § 45-5-511(4) (1985); Neb. Rev. Stat. § 28-321 (Supp. 1984); Nev.Rev.Stat. §§ 48.069, 50.090 (1983); N.H. Rev. Stat. Ann. § 632-A:6 (Supp. 1983); N.M.R.Evid. 413; N.Y.Crim. Proc.Law § 60.42 (McKinney 1981); N.C.R.Evid. 412; N.D. Cent. Code Ann. §§ 12.1-20-14 to 15 (1985); Ohio Rev. Code Ann. § 2907.02(D) (Page Supp. 1984); Okla. Stat. Ann. tit. 22, § 750 (West Supp. 1985); Or. Rev. Stat.Ann. § 40:210 (1984); Pa. Cons. Stat. Ann. 18 Pa. C.S.A. § 3104 (Purdon 1983); R.I. Gen.Laws, § 11-37-13 (1981); S.C. Code Ann. § 16-3-659.1 (Law.Co-op. 1985); S.D. Codified Laws Ann. § 23A-22-15 (1979); Tenn. Code Ann. § 40-17-119 (1982); Tex.Penal Code Ann. § 22.065 (Vernon Supp. 1986); Vt. Stat. Ann. tit. 13, § 3255 (Supp. 1985); Va.Code § 18.2-67.7 (1982); Wash. Rev. Code Ann. § 9A.44.020 (West Supp. 1986); W. Va. Code § 61-8B-11 (1984); Wis. Stat. Ann. §§ 972.11(2), 972.31(11) (West 1985); Wyo. Stat.Ann. § 6-2-312 (1983); State ex rel. Pope v. Superior Court, 113 Ariz. 22, 545 P.2d 946 (1976); State v. Johns, 615 P.2d 1260 (Utah 1980).
[2] As will be discussed infra, this statute, which was not repealed, continues in effect with substantial modifications, as N.J.S.A. 2C:14-7. See Cannel, Criminal Code Annotated, Comment 1, N.J.S.A. 2C:14-7 (1991).
[3] Alabama, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Vermont, Virginia, West Virginia and Wisconsin. See Note 1, supra.
[4] Here, although the trial judge indicated that he would allow the police witness to testify as to his investigation of allegations of sexual abuse by T.D.'s step-father, when defense counsel began to examine into the subject, all that the witness was allowed to acknowledge was that T.D. had "related something about some incident in 1986" involving her step-father. This was insufficient for the establishment of the defense theory.
[5] A number of other states with rape shield statutes like N.J.S.A. 2C:14-7 have declared admissible prior sexual conduct evidence not the subject of a statutory exception where such evidence was necessary to assure defendant a fair trial. See Raines v. State, 191 Ga. App. 743, 382 S.E.2d 738 (1989); State v. Jacques, 558 A.2d 706 (Me. 1989); Thomas v. State, 301 Md. 294, 483 A.2d 6, 18 (1983) ("Of course, rape shield laws may not be used to exclude probative evidence in violation of a defendant's constitutional rights of confrontation and due process."); Commonwealth v. Ruffen, 399 Mass. 811, 507 N.E.2d 684, 688 (1987) ("Yet, despite the general statutory policy prohibiting inquiry into a victim's prior sexual experiences, the Constitution requires that a defendant be permitted to introduce evidence which may materially affect the credibility of the victim's testimony."); People v. Hackett, 421 Mich. 338, 365 N.W.2d 120, 124 (1984) (recognizing that, despite rape shield statute, evidence of a victim's prior sexual conduct might "in certain limited situations [be] required to preserve a defendant's constitutional right to confrontation."); State v. Kroshus, 447 N.W.2d 203 (Minn. Ct. App. 1989) (reaffirming that evidence otherwise excluded by the rape shield statute may be admissible where constitutionally required); State v. Howard, 121 N.H. 53, 426 A.2d 457 (1981); State v. Williams, 21 Ohio St.3d 33, 487 N.E.2d 560 (1986); Commonwealth v. Black, 337 Pa.Super. 548, 487 A.2d 396 (1985) (holding that it was constitutionally impermissible to exclude, under the rape shield law, evidence of prior sexual conduct with third persons, offered to reveal a specific bias against the accused and therefore a motive to make a false accusation, so as to deny the accused the right of confrontation); State v. Finley, 300 S.C. 196, 387 S.E.2d 88 (1989); State v. Green, 163 W. Va. 681, 260 S.E.2d 257, 264 (1979) (disagreeing with legislative declaration that a victim's sexual history with other men is never relevant and never admissible, and recommending a provision in the rape shield statute "for in camera trial court determination whereby a judge may decide whether evidence of a victim's past sexual behavior is clearly relevant and material."); State v. Pulizzano, 456 N.W.2d 325 (Wis. 1990).
[6] Here, the State concedes that the prior acts occurred and that they closely resemble those in the present case. Given this and our holding that the evidence is relevant to a legitimate defense theory and would not prejudice the victim, no hearing on these issues need be held. Under ordinary circumstances however, a hearing out of the presence of the jury will be necessary to establish whether and to what extent prior sexual conduct evidence is required to be admitted.