**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Douglas D. ALDRICH, Defendant–
Appellant.**

**No. 90CA0871.**

Colorado Court of Appeals,
Div. V.

Aug. 13, 1992.

Rehearing Denied Sept. 10, 1992.

Certiorari Denied March 22, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Twining, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Lisa D. Hamilton–Fieldman, Deputy State Public Defender, Patrick J. Mulligan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge ROTHENBERG.

The defendant, Douglas Aldrich, appeals the judgment of conviction entered on jury verdicts finding him guilty of three counts of sexual assault on a child. We affirm.

In August 1988, the defendant's two nieces, B.H., age five, and C.H., age seven, together with M.W., the six-year-old daughter of a family friend, spent two weeks with the defendant, his wife, and their young son at their home.

Eight months later, following a school program on sexual abuse prevention, C.H. alleged that the defendant had assaulted her sexually during the August visit. She and the other two girls were then questioned by their parents and the police and all three made similar accusations.

The defendant was charged in a three-count information, and a jury trial was held in February 1990. In his opening statement, without having given prior notice of his intent to do so, defense counsel told the jury that C.H. had been the victim of a previous incident of sexual abuse and that the perpetrator was not defendant. The court granted the People's motion to strike and to exclude any reference to that incident on the grounds that the defendant had failed to follow the procedural requirements of Colorado's rape shield statute, § 18–3–407, C.R.S. (1986 Repl.Vol. 8B).

At trial, both C.H. and M.W. testified concerning numerous specific incidents of sexual assault during their two week visit with the defendant. C.H. also testified that the defendant had shown her magazines containing pictures of naked *"grown up* girls and boys" and that he had told her, "This is how you're going to grow up." Later, over the defendant's objection, the court permitted the introduction of magazines depicting explicit sexual matters which had been found in a basement crawl space during the execution of a search warrant at the defendant's home shortly after the allegations of sexual abuse had been made. C.H. did not see or identify these magazines at trial.

B.H., who was then seven years old, was also called to testify. Despite her earlier statements that defendant had touched her sexually, at trial B.H. was unable to identify the defendant and testified that "nothing bad" had happened to her. After that testimony and over the defendant's objection, the court permitted a deputy sheriff to testify concerning B.H.'s earlier statements to him which did describe sexual conduct toward B.H. by the defendant.

M.W.'s treating psychotherapist also testified as an expert about the professional standards now used to assess the credibility of children who make accusations of sexual abuse. During that testimony, she referred to certain of M.W.'s statements regarding the sexual assaults by the defendant against her and the other girls. The defendant did not object to this testimony.

Although the court denied the defendant's *pre*-trial motion to compel the prosecution to elect the specific incidents of conduct upon which it would rely at trial, the court did require the prosecution to elect specific incidents at the close of the trial. These specific incidents were also identified in the jury's instructions.

The defendant now contends that the trial court erred by: (1) refusing to admit evidence of C.H.'s prior sexual assault; (2) not requiring the prosecution to elect specific incidents of abuse until the instruction phase of the trial; (3) not giving limiting instructions concerning similar transaction evidence; (4) allowing hearsay testimony by the deputy sheriff and the psychotherapist about what the children told them without giving cautionary jury instructions; and (5) admitting the explicit adult magazines because their probative value was substantially outweighed by their prejudi-

cial effect. We reject all of defendant's contentions.

## I.

Citing *State v. Budis*, 243 N.J.Super. 498, 580 A.2d 283 (1990), the defendant argues that involuntary sexual conduct is not within the protection of the rape shield statute because evidence of such conduct does not establish "any of the classic inferences the law was meant to interdict." He further claims that, by excluding evidence of a prior assault, the court unconstitutionally denied him the ability to establish his defense that C.H. and, through her, the other girls had precocious sexual knowledge or that C.H. had mistakenly attributed the assaultive conduct of another person to him. We disagree.

Section 18-3-407, C.R.S. (1986 Repl.Vol. 8B) provides that evidence of specific instances of the victim's prior or subsequent sexual conduct is presumed to be irrelevant unless it is evidence of sexual conduct with the defendant or evidence of "the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the ... acts charged were or were not committed by the defendant."

Under the statute, if neither of these exceptions is applicable and the defendant wishes to present evidence of the victim's prior sexual conduct, he must file a written motion and an affidavit stating his offer of proof thirty days prior to trial, after which the court must hold an *in camera* hearing to determine if the proposed evidence is relevant to a material issue in the pending case.

Before the rape shield statute was enacted, evidence of previous sexual conduct could be used to undermine a sexual assault victim's credibility or to give rise to an inference that the victim had consented, thus discouraging victims from reporting and prosecuting sexual assaults. *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978). The statute "reflects a major public policy decision by the General Assembly ... that victims of sexual assaults should not be subjected to psychological or emo-

tional abuse in court as the price of their cooperation in prosecuting sex offenders." It strikes a balance between the defendant's right to confront his accuser and the victim's privacy interest by "conditioning admission of evidence of the victim's sexual history on the defendant's preliminary showing that it is relevant." *People v. McKenna, supra.*

Although neither the General Assembly nor our courts have defined the term "prior sexual conduct," courts in other jurisdictions have construed their rape shield statutes to include prior sexual assaults. *See State v. Oliver*, 158 Ariz. 22, 760 P.2d 1071 (1988) (rape shield case law extends to child molestation cases because children may be even more adversely affected than adults by unwarranted or unreasonable inquiry); *State v. Johnson*, 102 N.M. 110, 692 P.2d 35 (1984) (statute is not limited to sex by consent, and prior rape is sexual conduct within meaning of statute). *But see State v. Carver*, 37 Wash.App. 122, 678 P.2d 842 (1984) (rape shield statute does not apply to nonconsensual sexual conduct).

The procedural provisions of the rape shield statute permit the court, rather than the proponent of the evidence, to determine the relevance of such evidence. The *in camera* hearing allows a full presentation of the defendant's offer of proof without subjecting the victim to a public airing of past voluntary or involuntary sexual conduct. By requiring the determination to be made before trial, and out of the jury's presence, the statute not only protects the victim from harassment or humiliation, but also serves the state's legitimate interests in preventing surprise at trial and undue delay.

Accordingly, we adopt the reasoning of courts which have held that the purposes of the rape shield statute are served by requiring a preliminary judicial determination of the relevance of prior sexual assault.

■ Here, the defendant knew before trial that C.H. had been sexually assaulted previously, and thus, he could have complied with the procedural requirements of

the rape shield statute. This would have allowed the court to determine whether evidence of the earlier assault was relevant. However, by substituting his judgment for that of the court, the defendant defeated the protective purposes of the statute.

■ In view of our holding that the rape shield statute encompasses involuntary acts within the meaning of prior sexual conduct, we necessarily reject the defendant's contention that the rape shield statute was unconstitutional as applied. *See Michigan v. Lucas*, 500 U.S. ——, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (failure to comply with the notice and hearing requirements of a state's rape shield statute could justify preclusion of relevant evidence).

Here, the trial court did not prevent the defendant from complying with the statutory pretrial procedures to obtain a hearing on the relevance of the evidence. Rather, the defendant chose not to do so. In the face of this failure to comply, the court properly applied the statutory presumption of irrelevance.

## II.

■ The defendant next contends that he was denied a fair trial because the court did not require election of specific incidents of abuse until the instruction phase of the trial. He further asserts that this error was exacerbated by the court's failure to give limiting instructions pursuant to § 16–10–301, C.R.S. (1986 Repl.Vol. 8A). Again, we disagree.

■ If there is evidence of many acts of sexual assault on a child, any one of which would constitute the offense charged, the prosecution may be compelled to select the transaction on which it relies for a conviction, both to ensure unanimous jury agreement that the defendant committed the same act and to enable him to prepare a defense. *People v. Estorga*, 200 Colo. 78, 612 P.2d 520 (1980).

However, in *Thomas v. People*, 803 P.2d 144 (Colo.1990), the court ruled that such election need not be made before the conclusion of the prosecution's case. Rather,

it concluded that the accused can obtain adequate information to prepare a defense through the charging document, the preliminary hearing, and the discovery process. Additionally, the *Thomas* court ruled that if the prosecution does not elect specific incidents, the jurors must be instructed that: "[I]n order to find the defendant guilty ... they must unanimously agree either that the defendant committed the same individual act or acts or that he committed all of the acts described by the victim."

Here, although the trial court denied the defendant's *pre-trial* motion to compel an election, at the close of the trial, the trial court did compel the prosecutor to elect the specific incidents of conduct upon which it relied. All of such incidents had occurred during the two week period when the children had visited defendant's home. Further, the jury ultimately was instructed as to the specific incidents upon which the charges were based, and it was also given a unanimity instruction. The requirements of *Thomas* therefore were satisfied in all respects. *See also Woertman v. People*, 804 P.2d 188 (Colo.1991).

■ We also reject the defendant's contention that the court erred in not giving a limiting instruction pursuant to § 16–10–301(3), C.R.S. (1986 Repl.Vol. 8A).

■ Under this statute, evidence of similar transactions may be introduced to show a common plan, scheme, design, identity, modus operandi, motive, guilty knowledge, or intent if the court gives a limiting instruction at the time of the reception of such evidence and again in the general charge to the jury. However, the instruction is necessary only when the similar transaction is wholly independent of the crime charged. *People v. Geller*, 189 Colo. 338, 540 P.2d 334 (1975).

In cases involving a continuing pattern of sexual abuse of very young children, in which the evidence consists primarily of the children's statements, it is not likely that they will clearly identify the specific instances when particular acts took place. *Thomas v. People, supra.* The difficulty

of presenting testimony limited to a specific incident in such cases was discussed in *State v. Brown*, 55 Wash.App. 738, 780 P.2d 880 (1989):

> Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse has occurred on a regular basis and in a consistent manner over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Moreover because the molestation usually occurs outside the presence of witnesses, and often leaves no permanent physical evidence, the state's case rests on the testimony of a victim whose memory may be clouded by a blur of abuse and a desire to forget.

Although here C.H. and M.W. did refer to numerous sexual assaults committed against them by the defendant during the two week period, this testimony was not similar transaction evidence offered to prove scheme, plan, intent, or design. Rather, the evidence reflected the difficulty young children have in differentiating among various acts of sexual abuse occurring over a period of time.

We conclude that because this testimony concerned various acts of sexual assault which were an integral part of the offense with which the defendant was charged, the statutory requirements of § 16–10–301(3) do not apply.

### III.

The defendant next contends the court applied the wrong statute when it admitted the children's hearsay statements, and, as a result, the jury was not properly instructed. He asserts that § 13–25–129, C.R.S. (1987 Repl.Vol. 6A) is the exclusive means through which the hearsay testimony of child sexual abuse victims should be admitted. We disagree.

When a child is a victim of an unlawful sexual offense, § 13–25–129 permits the admission into evidence of hearsay statements *which are not otherwise admissible under the statutes or court rule*, provided the court gives a cautionary instruction to the jury both at the time the evidence is received and again in the general charge. *People v. McClure*, 779 P.2d 864 (Colo.1989).

### A.

Here, B.H. testified at trial that the defendant did not do "anything bad" to her. Thereafter, treating certain statements made by B.H. to a deputy sheriff as being the prior inconsistent statements of a witness, the court, acting pursuant to § 16–10–201, C.R.S. (1986 Repl.Vol. 9A), permitted the deputy sheriff to testify that B.H. told him that the defendant *had* molested her. We consider *Montoya v. People*, 740 P.2d 992 (Colo.1987) dispositive of this issue and, therefore, perceive no error in the trial court's ruling.

In *Montoya*, our supreme court held that § 16–10–201 allows a prior inconsistent statement to be used for impeachment or to establish a substantive fact. However, when the statement is introduced to establish a substantive fact and the witness denies its truth, certain foundational requirements must be satisfied before extrinsic proof of the statement is admissible. The witness, while testifying, must either be given an opportunity to explain *or* must be available to testify further at the trial, and the statement must relate to matters within the witness' own knowledge. *Montoya v. People, supra.*

However, even when a witness is not given an opportunity to explain or deny a prior statement, the court does not err in permitting extrinsic evidence concerning the statement if the witness remains available to give further testimony. *Montoya v. People, supra; People v. Stewart*, 39 Colo.App. 142, 568 P.2d 65 (1977).

Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which

they are examined or of relating them truthfully may not be witnesses. Section 13–90–106, C.R.S. (1987 Repl.Vol. 6A). Determining the competency of a witness of tender years is ordinarily for the trial court, and unless there is an abuse of discretion, a ruling on that question will not be disturbed on review. *People v. Alexander,* 724 P.2d 1304 (Colo.1986).

Here, although B.H. did not provide an explanation for her inconsistent statement to the sheriff's deputy, the court nevertheless found she was a competent witness and, therefore, "available" to testify. *See People v. District Court,* 776 P.2d 1083 (Colo.1989). Because there is evidence in the record to support the court's decision, we find no abuse of discretion.

Consequently, the statutory prerequisites of § 16–10–201 were met, and the sheriff's hearsay testimony was properly admitted under that statutory exception as a witness' prior inconsistent statement. *Montoya v. People, supra.* Accordingly, the procedural requirements of § 13–25–129, C.R.S. (1987 Repl.Vol. 6A) are not implicated.

### B.

■ The defendant also argues that the psychotherapist's testimony concerning out-of-court statements made to her by M.W. during the course of therapy were hearsay statements subject to the procedural requirements of § 13–25–129. Again, we disagree.

Initially, we note that this testimony related to only one of the three children and that M.W.'s statements were made to the therapist for purposes of medical diagnosis and treatment. *See* CRE 803(4). Further, the out-of-court statements constituted only a minor portion of the psychotherapist's lengthy testimony and defendant neither objected to the testimony nor requested a cautionary instruction under § 13–25–129. *See People v. McClure, supra* (plain error to allow five witnesses, including two experts and a police officer experienced in child sexual assault, to testify extensively as to details of victim's sexual assault). *But see People v. Wood,* 743 P.2d 422

(Colo.1987) (failure to give cautionary instruction *not* plain error where testimony by one non-expert witness did not disclose details of sexual act, and was introduced to corroborate victim's testimony that victim had reported abuse).

Testimony concerning another person's out-of-court statements is hearsay only if it is offered to prove the truth of the matter asserted in the statement. CRE 801(c). *People v. District Court, supra* (child-victim's statements were hearsay because they were offered to prove the identity of the person who abused her); *W.C.L. v. People,* 685 P.2d 176 (Colo.1984) (victim's statements offered to prove identity of person who abused her).

Here, however, the psychotherapist was not called for the purpose of relating the substance of what M.W. had told her. Rather, she testified as an expert witness and her purpose was to describe professionally accepted validation criteria used by experts to assess the credibility of children claiming sexual abuse. She explained that the validation criteria arose from years of research and involved over 10,000 cases in which children had reported being sexually abused and in which all offenders had admitted the abuse. As a result of these studies, researchers were able to agree upon a number of common criteria which "kept showing up over and over and over again."

The psychotherapist explained in detail the nature of these criteria which included: (1) how and when the child reported the sexual molestation; (2) whether the details when repeated remain consistent or appear to be story telling; (3) whether the child engages in remembered or programmed telling; (4) whether the language is of a type consistent with the victim's age; (5) whether the child's nonverbal language is consistent with abuse; (6) whether the child has been subjected to leading or suggestive questions or intimidation; (7) whether there were multiple episodes; (8) what means did the perpetrator allegedly use to induce or force the child to engage in sexual activity such as coercion, enticement, or manipulation; (9) whether the

perpetrator made threats or promises to prevent the child from telling; (10) whether there is explicit detail and explicit context arising from a true emotional experience; (11) what the relationship of the perpetrator is to the child; and (12) what the cognitive and social development of the child is relative to his or her chronological age.

According to the expert witness, these criteria are what she and other experts in the field of child sexual abuse look for "in initial interviewing and then in subsequent interviewing and even in therapy with children that supposedly have been sexually molested."

The therapist testified that she used these criteria with M.W. during her treatment of M.W. and observed the presence of every professionally accepted validation regarding M.W.'s accusations. Thus, her testimony was not offered to prove the truth of M.W.'s statements to her, but rather as a backdrop to explain the validation criteria for the jury and their application to the present case. See People v. Fasy, 829 P.2d 1314 (Colo.1992) (expert's opinion that child victim of sexual assault suffered from post-traumatic stress disorder admissible under CRE 702 because expert's testimony assisted the jury in understanding victim's post-assault behavior).

It is true that, when applying the above criteria to M.W.'s situation, the expert did make certain relatively brief references to actual statements by M.W. which were necessary in the context of her testimony. For example, she reported that M.W. drew a picture reflecting that the defendant had "rings attached to his private part." Also, she noted that M.W. had specified the places in which the sexual activity occurred, i.e., "at the creek, in the living room, and in the shower." And, she testified that M.W. had said she felt defendant's "private part" against her back in the shower and that it felt "weird."

However, although other evidence did tend to show the truth of M.W.'s statements, the testimony of the therapist was not so directed. Rather, the statements were used by the therapist only to show that the level of detail given by M.W. fit

the research criteria relating to the presence of explicit detail, the consistency of details when repeated, and the reporting of multiple episodes.

Similarly, when the therapist reported M.W.'s statement that the defendant promised he "would give her candy" and later said, "If you tell, I will kill your parents," the testimony was not presented to show that defendant had made the statements or that he would act in accordance with the statements, but rather to show that M.W. met another of the above criteria applicable in assessing the validity of reports of sexual abuse, namely the coercion, enticement, and manipulation used by the perpetrator.

And, since the expert explained that one important criterion suggesting reliability is the use of child-appropriate language, the jury was able to apply that criterion not only to M.W.'s statements, but also to assess the credibility of seven-year-old C.H.'s testimony that the defendant's "front private threw up in my mouth," and that the defendant had shown her magazines containing pictures of naked grown up "girls and boys." The expert's criteria also partially explained the context of B.H.'s testimony at trial that "nothing bad" had happened to her which recanted B.H.'s earlier statements, as well as B.H.'s difficulty with temporal relationships.

In sum, it was not the content of M.W.'s statements to her psychotherapist that was important here; rather, the significance of this witness' testimony was to explain the scientific data in the area of child abuse and to assist the jury by relating how M.W.'s statements fit into that criteria.

In State v. Myers, 359 N.W.2d 604, 609 (Minn.1984), the Minnesota Supreme Court faced the related issue of whether the emotional or psychological characteristics observed in sexually abused children are a proper subject for expert testimony. There, as here, the expert related certain statements made to her by the complainant. And, importantly, there as here, the therapist did not give her opinion that the child's allegations were truthful.

The Minnesota court found no error so long as the expert refrained from giving

her opinion that complainant's allegations were truthful and stated:

> There can be no doubt that an indirect effect of that portion of [the expert's] testimony was to bolster the complainant's credibility. Much expert testimony tends to show that another witness either is or is not telling the truth. That fact, by itself, does not render the testimony inadmissible. The test is not whether opinion testimony embraces an ultimate issue to be decided by the jury but whether or not the expert's testimony, if believed, will help the jury to understand the evidence or to determine a fact in issue.

. . . .

In the case of a sexually abused child consent is irrelevant and jurors are often faced with determining the veracity of a young child who tells of a course of conduct carried on over an ill-defined time frame and who appears an uncertain or ambivalent accuser and who may even recant. Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children, and particularly of [young] children.

*Accord U.S. v. St. Pierre*, 812 F.2d 417 (8th Cir.1987) (clinical psychologist permitted to testify to certain traits and characteristics of sexually abused children and compare them to those exhibited by victim).

Here, we agree with the People that the psychotherapist's testimony was permissible expert testimony and that the incidental statements made to the expert by M.W., when used in this context, were not hearsay. Thus, the provisions of § 13–25–129 do not apply. *See Schmutz v. Bolles*, 800 P.2d 1307 (Colo.1990); *Banek v. Thomas*, 697 P.2d 743 (Colo.App.1984) (unless evidence constitutes hearsay as defined by rule, there is nothing to which the exceptions to the hearsay rule may apply). *See also People v. Fasy, supra.*

## IV.

Finally, we conclude that the trial court did not commit reversible error in admitting the sexually explicit magazines found in the defendant's home.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. CRE 403. The determination of the probative value and the prejudicial impact of evidence is generally within the trial court's discretion and will not be disturbed on review absent an abuse of discretion. *People v. White*, 199 Colo. 82, 606 P.2d 847 (1980).

In reviewing the decision of the court to admit evidence, "we must assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected." *People v. Lowe*, 660 P.2d 1261 (Colo.1983).

Here, the court determined that because the magazines were similar to those described by C.H. and were found in the location where she said the defendant had shown such magazines to her, they corroborated C.H.'s testimony and were therefore relevant. Although the magazines contained graphic portrayals of unusual sexual behavior, and although the better practice might have been to have, at least, limited the admissible magazines to those described by C.H., we cannot say that the court abused its discretion in determining that the jury would not be unfairly prejudiced by their admission into evidence.

The judgment is affirmed.

DAVIDSON, J., concurs.

STERNBERG, C.J., dissents.

Chief Judge STERNBERG dissenting.

In my view, the trial court erred both in permitting the deputy sheriff to testify about the content of B.H.'s statement to him and in admitting the evidence of the children's out-of-court statements through the testimony of the psychologist without giving a cautionary instruction as mandat-

ed by *People v. McClure,* 779 P.2d 864 (Colo.1989).

Also, I would hold that the court abused its discretion in admitting into evidence the hundreds of pages of pornographic material found in defendant's home. In my view, the tenuous relevance of such material to bolster the credibility of C.H. was far outweighed by its prejudicial impact.

Accordingly, although I agree with the majority's treatment of the other issues raised, I respectfully dissent from its affirmance of the judgment.

## I.

### *The Sexually Explicit Exhibits.*

My first point of disagreement with the majority relates to the trial court ruling that accepted into evidence seven magazines containing hundreds of pages of photographs and text depicting explicit, graphic, bizarre sexual behavior by adults. Some of this material consists of photographs prominently displaying individuals apparently possessing both male and female sexual characteristics. Other photos depict "devices" for use in deviant sexual acts. In my view, admitting into evidence this explosively prejudicial material merely to bolster the testimony of the child witness that, while in the basement of defendant's house, she had been shown nude photographs was an abuse of discretion.

The primary impact of this material would be to inflame the average juror to whom such material would be unfamiliar, highly offensive, and possibly even disgusting and sickening. This could lead jurors to reach the emotional conclusion that defendant is a "bad" person deserving punishment irrespective of whether the particular charges here at issue had been proven. Thus, any valid purpose of bolstering C.H.'s testimony must have been lost in the hostility engendered by the material.

I recognize that appellate review of relevancy decisions is limited and that "we must assume the maximum probative value that a reasonable fact-finder might give the evidence and the minimum unfair prejudice to be reasonably expected." *People v. Lowe,* 660 P.2d 1261 (Colo.1983). Nevertheless, even applying this strict standard

of review, I would hold it was error to admit this evidence.

Three questions face the trial court in applying CRE 403: 1) is the proffered evidence legally material to a factual issue in the case; 2) does the evidence make the existence of a consequential fact more or less probable than it would be without the evidence; and 3) is the probative value of the evidence substantially outweighed by the danger of unfair prejudice. *People v. Carlson,* 712 P.2d 1018 (Colo.1986).

The probative value of the magazines was minimal. The record indicates only that the court believed that, because the magazines were found where C.H. had said they were, they corroborated her testimony. However, C.H. was not asked to identify the magazines as being those the defendant had shown her, and, indeed, most of them appear to be of a different type than she described. Furthermore, no essential element of the charged criminal acts depended for its proof on the admission of the magazines. And, the existence and nature of the magazines could have been established through the deputy's testimony without their prejudicial nature being revealed to the jury. *See United States v. Layton,* 767 F.2d 549 (9th Cir.1985) (availability of other evidence is a factor to be evaluated in balancing probative value and prejudicial impact).

By contrast, the prejudicial impact of the magazines was significant. Unfair prejudice, as the term is used in CRE 403, refers to evidence which tends to suggest decision on an improper basis, commonly an emotional one "such as sympathy, hatred, contempt, retribution, or horror." *People v. District Court,* 785 P.2d 141 (Colo.1990).

If ever there is a case in which the scale used to weigh probative value against unfair prejudice tilts strongly toward the latter, this is such a case.

## II.

### A.

### *Deputy's Testimony about B.H.'s Hearsay Statements.*

The only evidence presented concerning any alleged acts by defendant directed to-

ward B.H. were those reported in the deputy's testimony. Indeed, B.H. specifically testified at trial that the defendant did not do "anything bad" to her. Thus, conviction of defendant on the sexual assault count concerning B.H. hinges on this hearsay testimony.

The majority reasons that the testimony of the deputy about what B.H. had previously told her was properly admitted as a prior inconsistent statement to impeach or to establish a substantive fact. However, before such testimony can be received, the witness to be impeached must be given an opportunity to explain or deny the prior inconsistent statement, or must be available to testify further at the trial, and the statement must relate to matters within the witness' own knowledge. *Montoya v. People*, 740 P.2d 992 (Colo.1990).

The first of these requirements was not satisfied in B.H.'s trial testimony. Although the child was questioned about her earlier statement to the deputy sheriff, her answers were neither an explanation nor a denial.

Also, in my view, the trial court erred in finding that B.H. was "available" to testify. Contrary to the majority, I perceive no evidentiary support for the trial court's finding. Instead, the record demonstrates that B.H. did not qualify as a competent witness.

The testimony of B.H. was so fraught with inconsistencies and illogical statements as not to be credible. She was unsure about the difference between truth and lies. Her responses to both the prosecutor and defense counsel were unresponsive and confusing. And, she was unable to understand temporal relationships, as shown by her testimony that she had known M.W. for ten years, although she was only seven at the time she testified.

Because § 16–10–201 creates a statutory exception which permits hearsay evidence to be admitted to prove a substantive fact, it is particularly important that there be opportunity to examine the witness who made the prior inconsistent statement concerning the discrepancy. In my view, the foundational requirements of § 16–10–201, which insures that such examination is possible, were not satisfied here. Consequently, the deputy's testimony should not have been admitted as the report of a prior inconsistent statement.

Although the deputy's testimony was not admissible under a specific hearsay exception, the testimony might properly have been admitted pursuant to § 13–25–129 had the court followed the procedural requirements of that statute. It did not do so, and although neither the defendant nor the prosecution requested the court to give the cautionary instructions required by the statute, such failure constitutes reversible error. *See People v. McClure, supra.*

### B.

### *The Psychologist's Hearsay Testimony.*

I also disagree with the majority's conclusion that the psychologist's testimony concerning out-of-court statements by M.W. was properly received.

I do agree with the majority that much of the psychologist's testimony was not improper. However, that conclusion begs the question.

When the psychologist testified as to specific statements made by M.W. to her, such evidence would have been properly received, if and only if, the dictates of *People v. McClure, supra,* had been followed. However, a contemporaneous cautionary instruction was not given when the testimony was received, nor was a cautionary instruction given at the conclusion of the case. Failure to so instruct under the situation here requires reversal. Reference to just some of the objectionable out-of-court statements follows.

In discussing what M.W. told her the during the course of therapy, the psychologist stated:

> And then she went through, uh, the when, the where, the how in the interviewing process.... There were several places that she indicated, at the creek, in the living room and in the shower where she described different, uh, sexual activities that were taking place at those

times. She described ... the rings on the penis that she had seen when they were taking a shower together. And also at the creek as she described as the skinny dipping event, the shower event took place two or three times. She described in specific detail that she felt what she called his private part rubbing up on her back.

And, in describing the use of "child language," the psychologist testified that:

She [M.W.] described an event where they were in the tent with as she indicated Mr. Aldrich and he had taken their tops off of all three girls and would not give them back. She described, uh, the two or three incidents in the shower.

These circumstances are comparable to those which concerned the *McClure* court—expert testimony which might be imbued by the jury with special credibility together with details of the conduct corroborating other testimony. As the *McClure* court stated, in the absence of a cautionary instruction making the jury aware of the suspect nature of hearsay evidence, here, "the jury may have failed in its responsibility to examine the credibility of the source of these statements."

In conclusion, I recognize, as does the majority, that sexual abuse of children is a serious and seemingly growing problem in our society and that when such a crime is proved to have occurred severe punishment is justified. Nevertheless, we cannot allow our disgust at the crime to cause us to circumvent established principles of evidence. Especially is that true under the circumstances here in which the law already provides for reasonable exceptions to strict evidentiary requirements with safeguards against unfairness to defendants.

For the reasons stated above, I respectfully dissent from the majority opinion; I would reverse the conviction and remand for a new trial.